# Richmond

## MASON AND DIXON LINES, INC. v. COMMONWEALTH OF VIRGINIA.

January 13, 1947.

Record No. 3154.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*S. W. Shelton*, for the appellant.

*Abram P. Staples, Attorney General, W. W. Martin, Assistant Attorney General*, and *Blake T. Newton, Jr.*, for the appellees.

HOLT, C. J., delivered the opinion of the court.

This case is here on appeal, as a matter of right by virtue of section 3734 of the Code, from a final order of the State Corporation Commission entered April 30, 1946.

Chapter 108 of the Acts of Assembly of 1942, p. 127, requires that every motor carrier operating over the highways of Virginia for compensation, whether in intrastate or interstate commerce, or both, shall—

" * * * purchase, within the State, gasoline, or other

motor fuel, at least equal to that amount necessary for use in the operation as a motor carrier within the State, or such motor carrier shall, in lieu of making such purchase, pay into the treasury, for credit to the State Highway Fund, an amount equivalent to the prevailing State tax on the amount of gasoline, or other motor fuel, necessary for its operation as a motor carrier within this State over and above the amount of tax paid on gasoline, or other motor fuel, actually purchased in the State.

"Section 2. Every such motor carrier shall file with the State Corporation Commission (hereinafter called 'the Commission') periodic reports, at such times, but not less than quarterly, and on such forms, as shall be prescribed or permitted by the Commission, showing the mileage traveled and the gasoline, or other motor fuel, purchased within the State and the amount, if any, paid into the treasury in lieu of purchase of gasoline, or other motor fuel, as provided by this act."

This fund, when collected, is dedicated to the construction, reconstruction and maintenance of the highways of the State. Acts of Assembly 1932, p. 394, as amended by Chapter 206 of the Acts of Assembly 1942, p. 260, and by stipulation of counsel.

In the order from which this appeal is taken, it is said:

"UPON CONSIDERATION of all of which, the Commission is of the opinion, and so finds, that Mason and Dixon Lines, Incorporated, has failed, to the extent of 559,178.57 gallons, to purchase gasoline or other motor fuel necessary for its operation as a motor carrier within this State for the period from July 1, 1942, through December 31, 1945, and that the said respondent has failed to pay into the treasury of the State of Virginia as an alternative to such purchase an amount equivalent to the prevailing State tax on the said amount of 559,178.57 gallons of gasoline or other motor fuel, which equivalent amount is $27,958.93; that such failures of the said respondent constitute violations of Chapter 108, Acts of 1942, and, therefore, that judgment in the amount of $27,958.93 should be entered against the respon-

dent and, in addition, that a penalty of $1,000.00 should be imposed upon it for such failures aforesaid; and, no cause to the contrary having been shown;

"It Is Adjudged, Ordered, and Decreed, That judgment be, and it hereby is, entered against Mason and Dixon Lines, Incorporated, in the amount of $27,958.93, which amount is equal to the State tax on 559,178.57 gallons of gasoline or other motor fuel which the said Mason and Dixon Lines, Incorporated, has failed to purchase in Virginia for use in its operation in this State for the period July 1, 1942, through December 31, 1945, and which amount, together with that amount purchased in this State for use in Virginia was necessary for its operation within this State; and that the said Mason and Dixon Lines, Incorporated, do render unto the Commonwealth a penalty in the amount of $1,000.00, and the costs incident to this proceeding as assessed by the Clerk of the Commission according to law for its failure to comply with the requirements of Chapter 108, Acts of the General Assembly of 1942, as aforesaid; and, the respondent herein having indicated his intention to apply to the Supreme Court of Appeals of Virginia for an appeal and supersedeas to this decree."

There is in the record an opinion written by Judge L. McCarthy Downs, Chairman of the Commission. In it he said:

"The facts in this case are not in dispute, it being uncontroverted that the respondent, Mason and Dixon Lines, Incorporated, a Tennessee Corporation, and a motor carrier operating over the highways of this state in interstate commerce for compensation, has traveled 13,636,636 'over the road' miles over the highways of this state (over the road miles being the total mileage exclusive of the miles traveled in local pick up and delivery within cities or towns including the trading areas contiguous thereto), from July 1, 1942, to December 31, 1945; that the total over the road miles traveled in this state and elsewhere by it in its motor carrier operation during the aforesaid period was 33,396,562 miles; that the amount of motor fuel used in the said total over

the road operation for the period was 7,631,767 gallons; and that the application, on a quarterly basis, of the ratio of miles traveled over the road in this state to miles traveled in its over the road operation system wide to the total gallonage of motor fuel used in its said system wide operation produces a figure of 2,940,563.67 gallons; that the Commonwealth has established that this amount was the amount of motor fuel necessary to be used in its over the road operation on the highways of Virginia during the period from July 1, 1942, to December 31, 1945 (See Exhibit No. 2). The carrier has failed by an amount of 559,178.57 gallons to purchase the aforesaid amount of motor fuel in Virginia, for use in its Virginia operation, and has failed to pay into the treasury of Virginia the amount of the prevailing state tax upon the deficiency which amount is $27,958.93. By order entered under date of April 30, 1946, judgment was rendered against the respondent in the amount of $27,958.93 and a penalty of $1,000.00, together with the costs incident to this proceeding, was assessed against it for its failure to comply with Chapter 108, Acts of the General Assembly of 1942, all in accordance with Section 3 of the said Acts. The respondent has reported quarterly since July 1, 1942, through December 31, 1945, information required by the said Chapter 108, Acts of 1942, on forms prescribed by the Commission. These reports indicated on their face compliance with the Act and the deficiency was not discovered until an audit was made by the staff of the Commission. (See testimony of Masten, pages 13 and 16 of the transcript.) The company has never objected to the form of report, sought a correction, or presented a form of report different from that prescribed by the Commission."

Mr. J. C. Masten, First Assistant Assessor, State Corporation Commission, in his examination in chief said:

"A summary of the statement shows that the total amount of gas purchased in Virginia amounted to 3,753,591.1 gallons of motor fuel. The requirements in Virginia for the period amounted to 2,940,563.67 gallons. The Company resold in

Virginia 1,372,206 gallons, leaving a deficit of 559,178.57 gallons."

He tells us how he reached this deficit of 559,178.57 gallons:

"By taking the total number of miles traveled as compared with the total miles traveled in Virginia to determine the percentage of operation in Virginia, and applying that percentage to the total number of gallons of motor fuel purchased by the Company."

Further on cross-examination he testified as follows:

"Q. Are you able to give the Commission, Mr. Masten, the amount of gasoline or motor fuel which was necessary for their operation in the State of Virginia over the period in question?

"A. Yes, sir.

"Q. Sir?

"A. Yes, sir.

"Q. What was that amount?

"A. 2,940,563.67 gallons.

"Q. May I ask how you arrived at that figure?

"A. By taking the total number of miles traveled as compared with the total miles traveled in Virginia to determine the percentage of operation in Virginia and applying that percentage to the total number of gallons of motor fuel purchased by the Company."

This motor company, when its cause was heard by the Commission, introduced no evidence to contradict the figures furnished by Mr. Masten. Therefore we accept as true figures noted since they are not in dispute.

The defendant is a common carrier of property by motor vehicle and operates exclusively in interstate commerce under a certificate of convenience and necessity issued it by the Interstate Commerce Commission. Its operation has been continuous for many years, being partly in Virginia and partly in States north and south.

To the finding of the Corporation Commission twelve errors are assigned. It is said that this judgment is based upon guesswork; that improper evidence has been admitted,

and that said Act of 1942, upon which the judgment of the Commission rests, is unconstitutional and void.

The judgment itself rests upon data taken by a competent examiner from the defendant's records. If there is anything wrong about it, knowledge of that error rests in the breast of the defendant. It has kept quiet, and we may assume that there is no error. Granting, for the sake of argument, that these motor vehicles traveled a mile, more or less, than that stated and that a gallon of gasoline, more or less, than that stated was used, the finding of the Commission is undoubtedly substantially correct. Moreover, this judgment on behalf of the State must be treated as correct unless the contrary is made to appear. *Hendrick* v. *Maryland*, 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385.

It is said that the State has undertaken to burden interstate commerce. The law on this subject is thus stated in *Interstate Transit* v. *Lindsey*, 283 U. S. 183, 51 S. Ct. 380, 75 L. Ed. 953, 964-967:

"While a state may not lay a tax on the privilege of engaging in interstate commerce * * * it may impose even upon motor vehicles engaged exclusively in interstate commerce a charge, as compensation for the use of the public highways, which is a fair contribution to the cost of constructing and maintaining them and of regulating the traffic thereon * * * . As such a charge is a direct burden on interstate commerce, the tax cannot be sustained unless it appears affirmatively, in some way, that it is levied only as compensation for use of the highways or to defray the expense of regulating motor traffic. This may be indicated by the nature of the imposition, such as a mileage tax directly proportioned to the use * * * , or by the express allocation of the proceeds of the tax to highway purposes, as in *Clark* v. *Poor*, 274 U. S. 554, 47 S. Ct. 702, 71 L. Ed. 1199, *supra*, or otherwise. Where it is shown that the tax is so imposed, it will be sustained unless the taxpayer shows that it bears no reasonable relation to the privilege of using the highways or is discriminatory. * * * "

In *McCarroll* v. *Dixie Greyhound Lines*, 309 U. S. 176,

60 S. Ct. 504, 84 L. Ed. 683, it was held that a State may not directly burden interstate commerce by taxation but may require all who use her roads to make reasonable compensation therefor. In that case it appears that Arkansas undertook to lay a tax on fuel in the tanks of motor vehicles entering the State. This the court said could not be done.

If the State of Virginia were the sole owner of the R. F. & P. Ry., could it gravely be contended that it could make no charge for interstate freight passing over this line?

See also, *American Airlines* v. *Battle*, 181 Va. 1, 23 S. E. (2d) 796.

It is also said that certainly a part of the gasoline used in this State was purchased in another State and that Virginia can impose no tax on such a purchase.

The statute of this State, Acts of Assembly 1940, Chapter 198, p. 299, requires these carriers to purchase in Virginia all gasoline necessary for their use in Virginia. After the Mc-Carroll decision, decided in February, 1940, said statute of 1940 was amended. As amended, it requires the motor carrier to purchase in the State an amount necessary for its use in the State, "or such motor carrier shall, in lieu of making such purchase, pay into the treasury, for credit to the State Highway Fund, an amount equivalent to the prevailing tax on the amount of gasoline, or other motor fuel, necessary for its operation as a motor carrier within this State over and above the amount of tax paid on gasoline, or other motor fuel, actually purchased in the State."

As we have seen, this fund is by statute dedicated to the construction, reconstruction and maintenance of the State highways over which these motor vehicles pass.

In the construction of a statute, we look to its four corners. This statute would still apply if every gallon of gasoline bought by the defendant had been purchased in another State. It is for the use of the highways of the State that this tariff is assessed against it.

We are not concerned with names. It may be called a "tax," and it may be called a "charge" for the use of highways which the State has built. It applies to all motor ve-

hicles operated for hire, whether engaged in interstate or intrastate traffic. Every motor vehicle in Virginia which uses her public highways contributes in one way or another to their construction and maintenance. There is no claim that the charge in itself is excessive, and this is not affected by the fact that the motor carrier using Virginia highways purchases all of its gasoline in Tennessee or Texas. Construing the Act of 1942 as a whole, the point of its purchase is unimportant.

Objection is made to the introduction in evidence of a reciprocal agreement made between Tennessee and Virginia. It contains these provisions:

"6. Motor vehicles consisting of trucks, trailers and semi-trailers transporting property for-hire and/or compensation may be operated in both states without limitation as to the number of trips and without payment of any fees, license taxes, or inspection, supervision and license fees as required by Chapter 119, Public Acts of 1933, as amended, the same being the fee levied by the Tennessee Railroad and Public Utilities Commission, when the owner thereof is engaged only in interstate commerce in the State granting reciprocity to that of his domicile.

"7. The privileges extended by this agreement are conditioned upon the fact that such carriers shall purchase within the reciprocating state motor fuel sufficient to cover the mileage traveled in the reciprocating state.

"8. The privileges extended by this agreement shall not apply to any vehicle carrying a supply of motor fuel other than that contained in the usual tank or receptacle connected with the engine of the vehicle."

It there appears that the agreement is conditioned upon the fact that these carriers purchase within the State sufficient fuel to cover their mileage. It is not contended that the defendant did this, for upon page seventeen of the record this appears:

"We have agreed that the proceeds of the Virginia gasoline tax paid by this carrier, or any other carrier, less ad-

ministrative expenses, are used for construction and reconstruction and maintenance of the highways in Virginia.

"We have also agreed that the payments made under Chapter 108, if any such are made in lieu of the gasoline tax on gasoline purchased in Virginia, are credited to the State Highway Department fund and likewise used for the construction and reconstruction and maintenance of the highways of Virginia."

In view of this agreement of record in this case, the introduction of the reciprocal agreement between Virginia and Tennessee cannot prejudice the defendant.

This is the caption to the Act of 1942:

"Chap. 108.—An ACT to require certain motor carriers to purchase certain motor fuel in Virginia or, in ieu thereof, to make certain payments into the State treasury; to require certain reports to be made by such carriers; to provide for the administration of this act by the State Corporation Commission; to prescribe remedies for the enforcement of this act and penalties for violations; and to repeal Chapter 198 of the Acts of the General Assembly of 1940, approved March 13, 1940."

It is broad enough to cover its general purpose. *Richmond* v. *Pace*, 127 Va. 274, 103 S. E. 647.

Our conclusions are these: There is nothing uncertain about the statute itself. The finding of the State Corporation Commission is sustained by satisfactory evidence. The charge made against the defendant, by whatever name it may be called, is one for the use of highways constructed and maintained by the State. No unlawful burden is placed upon interstate commerce. From all of which it follows that there is nothing unconstitutional about the statute. The contention of the defendant that it be permitted, with its freight cars, to churn up the highways of the Commonwealth without contributing its proper share toward their maintenance and construction is without merit.

The order appealed from is affirmed, and it is so ordered.

*Affirmed.*