Russo et al., d. b. a. Par-Oak Confectionery, Appellees, *v.*
Donahue, Tax Commr., Appellant.

[Cite as Russo v. Donahue, Tax Commr., 10 Ohio St. 2d 201.]

(No. 40347—Decided May 24, 1967.)

*Mr. Joseph D. Karam*, for appellees.

*Mr. William B. Saxbe*, attorney general, and *Mr. Edgar L. Lindley*, for appellant.

BROWN, J. If we examine the Sales Tax Act as originally drawn, and note the amendments which the General Assembly adopted in reaction to judicial construction, we are assisted in understanding the limited usefulness of Section 5739.10, Revised Code, as it now stands. We may then judge the reason-

ableness and lawfulness of the position taken by the commissioner upon the original assessment and by the Board of Tax Appeals in modifying and reducing the commissioner's order.

The sales tax, as originally proposed in 1934 (115 Ohio Laws, Pt. 2, 306), was intended to be a 3% tax on retail sales of tangible personal property. The law as enacted was a "bracket tax" which the retailer was required to collect. The brackets and the amount to be collected were specified in Section 5546-2, General Code (Section 5739.02, Revised Code), effective January 1, 1935. The brackets and the tax as there stated were:

"One cent, if the price is forty cents or less;

"Two cents, if the price is more than forty cents and not more than seventy cents;

"Three cents, if the price is more than seventy cents and not more than one dollar;

"If the price is in excess of one dollar, three cents on each full dollar thereof; and if, in such case, the price is not an even number of dollars, then, in addition to the said tax on each full dollar thereof, one cent, if the price exceeds an even number of dollars by more than eight cents, but not more than forty cents; two cents if such excess is more than forty cents and not more than seventy cents; and three cents if such excess is over seventy cents.

"If the price is less than nine cents, no tax shall be imposed."

It is clear that any vendor who made no sale over eight cents would neither collect nor pay any sales tax, so that his effective rate of tax collection would be zero per cent of his gross retail sales.

It was also clear that any retailer whose taxable sales consisted entirely of individual sales each in the amount of exactly 41 cents would under the law be required to collect the tax at an "effective" tax rate of almost 5%. This demonstrates that, as with any "bracket tax," the effective rate of tax collection will vary depending upon what proportion of a vendor's taxable sales falls into any particular tax bracket.

By the provision of Section 5546-3, General Code (Section 5739.03, Revised Code), that "* * * the tax hereby imposed

shall be paid by the consumer to the vendor * * *," the General Assembly clearly indicated that the bracket tax was a tax on the consumer.

The original Ohio Sales Tax Act, enacted to impose a temporary tax, was to have expired on December 31, 1935, but in December 1935 the act was re-enacted with certain amendments, effective on January 1, 1935, and ending on March 31, 1937. (116 Ohio Laws, Pt. 2, 69.) Two important and material changes occurred at this time. Section 5546-12, General Code (Section 5739.11, Revised Code), was amended to require the keeping of "complete and accurate records of sales of taxable property, together with a record of the tax collected thereon," and Section 5546-12a, General Code (Section 5739.10, Revised Code), was enacted to provide that if an examination and audit of the consumer's records disclosed no separate records of the tax collected or that the aggregate collection was less than 3% of the vendors' sales it should then be "conclusively presumed that the vendor has failed to collect the tax." In such event, an assessment of "the amount of the tax * * * which the vendor should have collected" was authorized.

On December 30, 1937, in *Seiller* v. *Dunn*, 26 Ohio Law Abs. 266, Judge Reynolds of the Franklin County Common Pleas Court considered the presumption created by Section 5546-12a, General Code, and said:

"* * * Let us suppose a case where a vendor's sales were all eight cents or less, which by the statute are exempt from tax, yet, according to the provisions of Section 5546-12a, General Code, the vendor would be liable for an assessment, even though he had complete records of all sales.

"It needs no citation of authority to show that such a provision is invalid since it nullifies the direct provisions of the sales tax law with reference to exempt sales."

That decision was important in two respects: (1) It decided that, if the tax was collected as specified, the tax actually collected was the limit of liability. That is to say that the effective rate collected was the limit of the vendor's tax liability under that statute and that the statutory presumption was ineffective to change this fact. (2) It also pointed out that the statute as drawn failed to tax sales under nine cents. It is probable that

the General Assembly had not intended that such sales be exempt and it is probable that the General Assembly had intended to levy a minimum tax on retail sales other than those specifically exempted. This is demonstrated by the fact that the General Assembly, in December 1936, in a bill effective on January 1, 1937, re-enacted Section 5546-12a, General Code (116 Ohio Laws, Pt. 2, 323, 333), as follows:

"*In addition* to the tax levied in Section 5546-2 of the General Code * * * beginning January 1, 1937, there is hereby levied *upon the privilege of engaging in the business of making retail sales,* an excise tax of three per centum of the receipts derived *from all* such *retail sales,* excepting those to which the excise tax imposed by Section 5546-2 of the General Code is made inapplicable by subparagraphs 1 to 12, inclusive, of said section. The tax imposed by this section shall be determined by deducting from the sum representing three per centum of the receipts from such retail sales the amount of tax paid to the state by means of cancelling prepaid tax receipts in accordance with the provisions of Section 5546-3 of the General Code. This section shall not be so construed or applied as to affect any duty of the vendor under Sections 5546-1 to 5546-17, both inclusive, of the General Code, nor the liability of any consumer to pay any tax imposed by Section 5546-2 of the General Code." (Emphasis added.)

The language of this section, as amended, stated that it levied a 3% tax on *the privilege* of engaging in the business of making retail sales. The tax applied against sales except those to which the tax imposed by Section 5546-2, General Code, was inapplicable. Hence, this tax on "all * * * retail sales," with certain exceptions not here involved, clearly taxed retail sales below nine cents which was the lowest individual sale upon which the bracket collection was made. From the tax thus levied, the act authorized the deduction of the tax paid to the state by means of cancelling prepaid tax receipts in accordance with the provisions of Section 5546-3, General Code.

This, then, was a clear legislative attempt to collect at least 3% tax on all of a vendor's sales, excluding only those to which the statute was specifically inapplicable. This amendment was effective to accomplish the legislative purpose until 1945

when this court decided *Winslow-Spacarb, Inc.,* v. *Evatt, Tax Commr.,* 144 Ohio St. 471. In that case, the court was again confronted by a factual situation in which all the vendor's sales were under nine cents and not covered by the bracket tax. The sales were of soft drinks and were not otherwise exempt. If Section 5546-12a and Section 5546-2, General Code, were considered to impose separate taxes, this fact situation demonstrated that vendors, all of whose sales were in excess of eight cents, were *tax collectors,* while the vendors whose business consisted entirely of sales less than nine cents were *taxpayers.*

If the two sections created different taxes it was arguable that they contained a constitutionally invalid classification of taxpayers or that they violated the equal protection clauses of the state and federal Constitutions.[1] Choosing to construe Section 5546-12a, General Code, so as to avoid the constitutional question, this court there held in the syllabus:

"2. Section 5546-12a, General Code, purporting to levy an excise tax of three per cent on the receipts derived from all retail sales, with described exceptions and less certain credits, is an enactment designed to insure to the state approximately the receipt of the tax imposed by Section 5546-2, General Code, and does not impose an independent tax.

"3. The retail sales of a vendor engaged exclusively in the making of separate sales of a commodity at a price of less than nine cents per unit are not subject to tax under Section 5546-2, General Code, and Section 5546-12a, General Code, does not apply to the sales of such vendor or to him."

That taxpayers and the Tax Commissioner had thought otherwise is demonstrated by an extract from an article by Tax Commissioner C. Emory Glander, commenting on the *Winslow-Spacarb case,* which appeared in 18 Ohio Bar in 1945.[2]

---

[1] It is interesting to note that other states when confronted by the same problem decided this question otherwise. See *White* v. *State,* 49 Wash. 2d 716, 306 P. 2d 230. See, also, 9 Vanderbilt L. Rev. 316 at 340.

[2] "Two recent decisions pertaining to sales and excise taxes are of sufficient general interest to warrant comment.

"The first is *Winslow-Spacarb, Inc.,* v. *Evatt,* 144 Ohio St. 471 * * *. The appellant was engaged exclusively in selling soft drinks at five cents each from automatic cup-vending machines. The Tax Commissioner made an assessment in 1942 in a sum representing 3% of gross sales. In so doing,

After the *Winslow-Spacarb* decision, both Section 5546-2 and Section 5546-12a were amended. (122 Ohio Laws 912, 914.) The former section was amended so that no bracket tax was to be collected on sales under 41 cents and the latter section was amended by excluding retail sales under 41 cents from the computation so as to meet the constitutional difficulty noted by Judge Zimmerman.

Subsequent to those changes in the Sales Tax Act, effective in 1948, no significant changes have been made in the act which are important to a consideration of the problem which is now before us, except that the lowest bracket upon which the tax is to be collected from the consumer by the vendor was lowered to 31 cents in 1959 (128 Ohio Laws, 421, 426, 431), and in 1962 (129 Ohio Laws 1164, 1167) the stamp cancellation method of obtaining prepayment of the tax by the vendor was eliminated from Section 5739.03, Revised Code.

It now becomes observable that there are three distinct periods in the history of Ohio sales tax law during each of which the sales tax was such an entirely different tax, either by reason of the statutory language in force at the time or by reason of judicial interpretation of that statutory language, that cases

---

he relied on Section 5546-12a, General Code, which levies a 3% excise tax for the privilege of engaging in the business of making retail sales. This section was enacted, as you know, after the enactment of the bracket sales tax provided in Section 5546-2. The Supreme Court held that this 3% levy was enacted to insure to the state approximately the receipt of the bracket tax, and does not impose an independent tax. Thus, the court further concluded that where a vendor is engaged exclusively in making separate sales at less than nine cents per unit, *such sales are not subject either to the bracket tax or the 3% excise tax.*

"Following the decision, applications for refund of such taxes were filed by a number of vendors under Section 5546-8. We were immediately confronted with two questions: First, whether refunds should be made to vendors who had paid the tax and had not filed a petition for reassessment; and, second, from what date the 90-day period within which refund applications may be filed began to run. We submitted these questions to the Attorney General. In Opinion No. 542, he has ruled that such vendors are entitled to refunds even though a petition for reassessment had not been filed. He also ruled that the ninety-day period in such cases began to run from the date of the Supreme Court's decision, to wit, February 21, 1945. We concur in this ruling and shall follow it." Recent Developments In State Tax Administration, by C. Emory Glander, 18 Ohio Bar 478, 484.

which are referable to any of such periods will contain generalizations which have little applicability to other periods.

The first period includes the original Sales Tax Act, effective from 1935 to 1937, which imposed a straight retail sales tax payable by the purchaser, collectible by the vendor and remittable by the vendor to the state. During this period, the amount of tax payable, and hence the amount for which an assessment could be made, was limited by the amount actually collected.

The second sales tax period includes the period between January 1937 and the decision in *Winslow-Spacarb* in 1945 and the period thereafter until the amendment of the statute, effective in 1948. During this period, as has been noted (and *Winslow-Spacarb* to the contrary notwithstanding), under Section 5546-12a, General Code, there was a sales tax in the nature of an occupation tax on the vendor, as well as a bracket sales tax to be paid by the purchaser under Section 5546-2, General Code.[3]

As has been pointed out, the tax imposed by Section 5546-12a, General Code, on the occupation of being a retailer and engaging in retail business had as its base all the vendor's retail sales, except those sales to which the tax was specifically made inapplicable.

The sales to which the bracket tax of Section 5546-2, General Code, was applicable during this period were entirely different sales. They consisted of all the vendor's retail sales, except sales below the lowest tax bracket and sales to which the tax was specifically made inapplicable. The tax bases were different.

During this period, the occupation tax base could be easily reconstructed by the purchase markup method. The resulting tax would be the maximum tax to which the state was entitled in all cases, except those in which the vendors had an effective rate of tax collection under Section 5546-2, General Code, on the sales to which the provisions of that statute applied and which resulted in a collection from the consumer which exceeded 3% of the sales to which Section 5546-12a applied. During this

---

[3] See 9 Vanderbilt Law Review, Sales Tax Collection Problems, 316, 340.

period, test checks to show what proportion of the particular vendor's sales consisted of sales below the lowest tax bracket would have had no materiality in computing the occupation tax. After *Winslow-Spacarb*, and before the amendment effective in 1948, that proportion became important for the first time since January 1937. It actually became more important to some vendors than to others. Vendors, all of whose sales had consisted of individual sales below the lowest bracket, had been collecting no tax from the consumer and paying 3% tax to the state. These would continue to collect no tax and also would now pay none. Those vendors whose sales consisted of mixed individual sales, some below and some within or above the lowest bracket, would continue to collect the bracket tax on those sales which were within the tax brackets and would owe the occupation tax of 3% only on that proportion of their sales which were within the tax brackets.

The taxpayers in each of these two groups were now confronted by the obligation of keeping records in order to carry their burden of proving which of their sales were exempt under the new exemption, and hence should not now be included in the base of their occupation tax. 10 R. C. L. 896, 898; annotation, 39 A. L. R. 273. See, also, subsequent cases of *Obert* v. *Evatt, Tax Commr.*, 144 Ohio St. 492, and *James* v. *Glander, Tax Commr.*, 150 Ohio St. 192. Such records, unless otherwise excused, would also be required to meet the presumption of taxability provided by Section 5546-2, in this language: "For the purpose of the proper administration of this act and to prevent the evasion of the tax hereby levied, it shall be presumed that all sales made in this state are subject to tax unless the contrary is established." As to those taxpayers whose sales consisted entirely or in large proportion of individual sales in excess of the lowest bracket, the new tax exemption, which might somewhat reduce the tax base of the 3% tax levied by Section 5546-12a, General Code, would have an extremely minimal effect upon the tax payable to the state because it was mathematically obvious that as to those vendors the effective rate of collection of the bracket tax would exceed 3%.

With all these things in mind, the General Assembly again amended the act, effective on January 1, 1948. The bracket

upon which no tax was to be collected was enlarged to 40 cents, thus enlarging the number of vendors who, by keeping records of sales below that figure, would demonstrate little or no tax liability and also enlarging the middle group which had a large proportion of sales under the lowest bracket and hence would find it extremely advantageous for the first time to keep such records in order to avoid assessment for sales which were now in fact exempt. Under such circumstances, it was understandable that the General Assembly, having abandoned its effort to include sales under the lowest bracket in the tax base of what was left of the occupation tax, would excuse such vendors from keeping records of such sales and would eliminate assessments based solely upon the presumption of taxability of all sales.

In eliminating the keeping of records of individual sales below the lowest tax bracket, the General Assembly had to carefully avoid imposing upon the Tax Commissioner the impossible burden of proving what proportion of the vendor's sales were below that bracket. With that in mind, the following language was included in the amendment of Section 5546-12a, General Code, effective August 1, 1948: "* * * provided, however, that for the purpose of this section no vendor shall be required to maintain records of individual retail sales of tangible personal property under forty-one cents, and no assessment shall be made against any vendor for retail sales of less than forty-one cents made on and after August 1, 1948, solely because the vendor has no records of or has inadequate records of retail sales of less than forty-one cents; and provided further that where a vendor does not have adequate records of receipts from his retail sales in excess of forty cents the Tax Commissioner may refuse to accept the vendor's return and upon the basis of test checks of the vendor's business for a representative period and other information relating to the sales made by such vendor determine the proportion that taxable retail sales bear to all his retail sales."

This language is circumspect. It does not shift to the Tax Commissioner the burden of proving which sales are exempt. It eliminates the possibility that an assessment can be made as to that part of a vendor's sales which are made up of individual sales less than 41 cents, and yet it specifically provides that

the commissioner may refuse to accept the vendor's return and determine the proportion of retail sales that are taxable by the test-check method.

Counsel for appellees argues that the express authorization of the test-check method of determining this proportion bars the use of test-check information by the Tax Commissioner for any other purpose, under the maxim, *expressio unius est exclusio alterius.* We think the contrary is true and that it can be more logically argued that that principle bars the use of test-check information *by the vendor* for any other purpose. This, in effect, was the holding of this court in *S. S. Kresge Co.* v. *Bowers, Tax Commr.,* 2 Ohio St. 2d 113. This language, making the test-check method available to the vendor *and* the Tax Commissioner for the purpose of determining this one specific proportion, does not show a legislative intention to bar the Tax Commissioner from the use of this device or method for any other purpose.

The general proposition as to what an administrative body must do where the taxpayer has no records is succinctly stated in *Mitchell Bros. Truck Lines* v. *Hill, Commr.,* 227 Ore. 474, 484, 363 P. 2d 49, as follows:

"It appears to be the general rule, *and common sense would dictate,* that if a taxpayer fails to keep proper records, or for some other reason exact information is unavailable, some formula must be devised to determine the tax established by legislative authority. *Vale* v. *Du Pont,* 37 Del. 254, 182 A. 668, 103A. L. R. 946; *W. T. Grant Co.* v. *Joseph,* 2 N. Y. 2d 196, 140 N. E. 2d 244; *Mason and Dixon Lines* v. *Commonwealth,* 185 Va. 877, 41 S. E. 2d 16; *Gasper* v. *Commissioner of Internal Revenue,* 225 F. 2d 284."

The principle of *expressio unius est exclusio alterius* is not applicable to the language of Section 5739.10, Revised Code, to exclude the use of test-check information by the Tax Commissioner. Such evidence may be used alone or in connection with other evidence available to the Tax Commissioner in attempting to determine a rate equivalent to the rate at which the vendor actually collected tax from the consumers under Section 5739.02, Revised Code. It is noticeable that, with the amendments to Section 5739.10, Revised Code, eliminating from the

tax base of the occupational tax that part of the vendor's sales which consist of individual sales in amounts less than 31 cents or of food for human consumption off the premises, the tax base of Section 5739.10, Revised Code, and the sales upon which it is directed that tax be collected under the bracket tax provided in Section 5739.02, Revised Code, are now identical. Whether we compute the percentage of a vendor's sales to which the tax is applicable by reference to his records or on the basis of test checks, it is apparent that the base of the occupation tax is exactly the same and will consist of the same sales to which the bracket tax applies. Since the tax provided for by Section 5739.10, Revised Code, is 3% and the bracket tax on the same sales cannot amount to less than 3%, we must observe that the re-enactment of Section 5739.10, Revised Code, was of doubtful purpose, except for its language excusing the taxpayer from keeping records of sales below 31 cents and avoiding an assessment upon the vendor as to such sales on a presumptive basis. It cannot tax any sale which Section 5739.02, Revised Code, does not tax at an equal or higher rate.

When the limited usefulness of Section 5739.10, Revised Code, as that statute presently exists in the overall scheme of sales tax collection, is compared to the vast importance of the remittance to the state of Ohio of the tax required by law to be collected under Section 5739.02, Revised Code, the importance of keeping records required by Section 5739.11, Revised Code, and of devising reasonable methods for estimating taxable sales and assessing those vendors at a rate equivalent to the rate at which they effectively collected the bracket tax becomes apparent. This is especially true now that the 1962 amendment of the Sales Tax Act, eliminating the necessity for cancellation by the vendor of prepaid sales tax stamps, has eliminated the device which heretofore aided enforcement of the vendor's duty to collect and remit the bracket tax.

The amendments to Section 5739.10, Revised Code, which were effective August 1, 1948, and thereafter, have so changed that statute and the overall procedure of sales tax collection in the state of Ohio that the generalizations contained in the *Winslow-Spacarb case* have no usefulness in considering the problem before this court at this time under the facts of this case.

Neither the Board of Tax Appeals nor this court should observe those generalizations and be blinded to the clear and unequivocal language of the present statute which requires vendors to keep records of the tax collected, to collect the tax as described by Section 5739.02, Revised Code, and to remit it to the state, and excuses them only from a minimal 3% assessment under Section 5739.10, Revised Code, as to those sales which a test check will show probably occurred in individual sales of less than the lowest bracket amount. This is especially true since Section 5739.10, Revised Code, as re-enacted, specifically provides that no provision therein contained affects any duty of the vendor under Sections 5739.01 to 5739.19, inclusive, Revised Code, and under Sections 5739.26 to 5739.31, inclusive, Revised Code.

Section 5739.13, Revised Code, imposes a duty upon the vendor both to collect and remit to the state the bracket tax imposed by Section 5739.02, Revised Code, and makes him subject to assessment and personally liable in the event he fails in either respect. Section 5739.11, Revised Code, imposes upon the vendor the duty to maintain records. The vendor has the burden of providing such records or of being assessed on the basis of test checks or of any other information in the possession of the Tax Commissioner. In the absence of a clear prohibition in any part of the statute against the use of such information as the Tax Commissioner may have in his possession as a result of test checks of representative periods of a particular vendor's business, we see no reason why such test-check information may not be used by the Tax Commissioner alone or together with other information as the basis of an assessment.

The finding of the Tax Commissioner that the vendors had collected the tax at an effective rate of 3.292% of the sales subject to tax and failed to remit the excess above 3% is, under the evidence which resulted from the test check, not unreasonable, especially in view of the fact that the vendor who testified that the tax had been collected throughout the audit period in exactly the same manner and method as was used during the test period and who conducted the test check and introduced its results does not complain that the test period was not representative.

The finding of the Board of Tax Appeals that the vendors'

liability was limited by the language of Section 5739.10, Revised Code, to 3% of the sales which were subject to tax irrespective of the rate at which tax was effectively collected by the vendors is unlawful since the 3% rate described by Section 5739.10, Revised Code, is not an alternate rate which the vendors can elect to pay by the simple expedient of not keeping records.

Since it appears that the vendors here have (in the language of Section 5739.12, Revised Code) "collected in excess of three per cent of his receipts from sales which are taxable under Section 5739.02 of the Revised Code as tax from consumers," their duty as to that excess is that "such excess shall be remitted along with the remittance of the amount of tax due under Section 5739.10 of the Revised Code."

Assessment in excess of 3% is also required by Section 5739.01, Revised Code, which provides:

"The tax collected by the vendor from the consumer under Sections 5739.01 to 5739.31, inclusive, of the Revised Code is not part of the price, but is a tax collection for the benefit of the state, and except for the discount and credits authorized in Section 5739.12 of the Revised Code, *no person other than the state shall derive any benefit from the collection or payment of such tax.*" (Emphasis added.)

The decision of the Board of Tax Appeals in this matter is, therefore, reversed and the final order of the Tax Commissioner is affirmed.

*Decision reversed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, O'NEILL, HERBERT and SCHNEIDER, JJ., concur.