MCDONALD'S OF SPRINGFIELD, OHIO, INC., ET AL., APPELLEES,
*v.* KOSYDAR, TAX COMMR., APPELLANT.
MCDONALD'S OF UNIVERSITY CITY, OHIO, INC., ET AL.,
APPELLEES, *v.* KOSYDAR, TAX COMMR., APPELLANT.

(Nos. 74-590 and 74-913—Decided July 2, 1975.)

6

*Messrs. Topper, Alloway, Goodman, DeLeone & Duffey* and *Mr. R. Brooke Alloway,* for appellees.

*Mr. William J. Brown,* attorney general, and *Mrs. Maryann B. Gall,* for appellant.

*Per Curiam.* Taxpayers contend that their records were complete and adequate and that, therefore, the Tax Commissioner lacked authority to institute test checks of their outlets.

The statutory duty imposed upon vendors to maintain records of sales is found in R. C. 5739.11, which states, in pertinent part:

"Each vendor shall keep complete and accurate records of sales, together with a record of the tax collected thereon, which shall be the amount due under Sections 5739.01 to 5739.31, inclusive, of the Revised Code * * *."[1]

When a vendor fails to comply with these requirements, R. C. 5739.10 authorizes the Tax Commissioner to conduct a test check. That section provides, in part, that:

"* * * [W]here a vendor does not have adequate records of receipts from his retail sales in excess of fifteen cents or sales of food for human consumption on the premises where sold, the Tax Commissioner may refuse to accept the vendor's return and, upon the basis of test checks of the vendor's business for a representative period, and other information relating to the sales made by such vendor, determine the proportion that taxable sales bear to all his retail sales. * * *"

Taxpayers assert that their cash register tapes were

---

[1] Rule TX-11-02 of the Rules of the Tax Commissioner expands upon this statute by stating, in part:

"Each vendor must maintain complete and accurate records which include both:

"(1) Primary records, such as purchase invoices, bills of lading, sales invoices, guest checks, exemption certificates, tax payment receipts, and cash register tapes;

"(2) Secondary records, such as bank deposit receipts and day books, journals, or any other records in which accumulated data is recorded."

available to the Tax Commissioner and that the tapes contained the primary evidence upon which the audit should have been conducted. However, the record-keeping requirements within R. C. 5739.11 must be construed in a manner which will allow the Tax Commissioner to determine if sales taxes which should have been charged by vendors were actually collected and remitted to the state Treasurer. Thus, in order to be "adequate," a vendor's records must enable the Tax Commissioner to ascertain if the proper sales tax was collected according to law.

In the cases at bar, the cash register tapes only indicated the total price of each individual sale and the total amount of tax charged. There was no delineation showing what items were considered taxable or nontaxable, and no indication of which sales were for consumption on the premises as opposed to consumption off the premises.[2] Taxpayers' employees did not always use guest checks for specific purchases, and these were not available to help explain how the employees treated individual sales. Therefore, it is our conclusion that taxpayers' records were not "adequate," within the meaning of R. C. 5739.10, and where records required by R. C. 5739.11 are not kept, or are inadequate, the Tax Commissioner may make use of all available information, including information gained as a result of the "test-check method," to determine a rate equivalent to the rate at which the vendor in fact collected the tax from consumers under R. C. 5739.02. *Russo* v. *Donahue* (1967), 10 Ohio St. 2d 201, 226 N. E. 2d 747.

Additionally, prior to the initiation of test checks, ap-

---

[2]Pursuant to R. C. 5739.02(B)(2), the sales tax does not apply to "[s]ales of food for human consumption off the premises where sold." R. C. 5739.02(B)(22) provides further, in part, that "* * * 'food' does not include * * * soft drinks; sodas and beverages which are ordinarily dispensed at bars and soda fountains or in connection therewith other than coffee, tea, and cocoa * * *."

The cash register tapes did not disclose whether taxpayers' employees were properly charging and collecting sales taxes on soft drinks, and only as a result of the test checks was it discovered that, in fact, some outlets were not charging a tax on such drinks.

pellant's agents had determined from appellees' tax returns th'at each outlet, in almost every month, paid an effective tax rate virtually equal to the nominal rate prescribed by law. In *Russo* v. *Donahue, supra,* this court noted that in any "bracket tax" system, such as Ohio employs, the effective rate of tax collection will vary, depending upon which proportion of a vendor's taxable sales falls into the particular tax brackets. From the record herein, and the price structure of McDonald's products, it is evident, as *Russo* recognized, that taxpayers' returns should not reflect an effective rate equal to the nominal rate.

In these cases, the lack of a variance between the effective and nominal rate justified a test check under the applicable provisions of R. C. 5739.13, which state:

"* * * When information in the possession of the commissioner indicates that the amount required to be collected under the provisions of Section 5739.02 of the Revised Code is, or should be, greater than the amount remitted by the vendor, the commissioner may upon the basis of test checks of a vendor's business for a representative period, which are hereby authorized, determine the ratio which the tax required to be collected under Section 5739.02 of the Revised Code bears to the receipts from the vendor's taxable retail sales, which determination shall be the basis of an assessment as herein provided in this section. * * *"

Taxpayers contend further that the Tax Commissioner improperly used an average of figures derived from a test check of four of appellees' outlets in the Columbus area to compute the assessment against the outlet in Springfield, Ohio.

The relevant statutory provisions within R. C. 5739.10 and 5739.13 authorize assessments upon the basis of test checks of a "vendor's business for a representative period." In the case at bar, the test checks applied to the Springfield outlet were conducted at different locations outside Springfield. Clearly, they were not of the "vendor's business" as required by the above statutory language. To

10

be valid, a test check must be conducted under conditions which approximate, as nearly as possible, the conditions under which the business was operated by the taxpayer during the audit period. *Cherry Street Corp.* v. *Porterfield* (1971), 27 Ohio St. 2d 260, 272 N. E. 2d 124.

Here, the commissioner does not assert, nor does the record indicate, that the four outlets used were comparable to the Springfield unit in their physical layouts (which could influence sales for consumption off the premises, depending on inside seating), or were situated in areas of a similar economic makeup (which could affect the volume of business). In light of the above, it is our finding that the Tax Commissioner did not satisfy the statutory requirement that the test check be of a ''vendor's business for a representative period,'' and the assessment against the Springfield outlet, based upon those test checks, was improper. As to the remaining outlets before us, there is no evidence establishing that the test checks were not representative, or that the figures used to compute the assessments were erroneous.

For the foregoing reasons, in case No. 74-913 the judgment of the Court of Appeals for Cuyahoga County is reversed, insofar as it determined that the test checks were not authorized. In case No. 74-590, that part of the judgment of the Court of Appeals for Franklin County, disallowing test checks and assessments pursuant to R. C. 5739.-10, is reversed, and its decision finding no evidence to support the additional assessment against the Springfield outlet is affirmed.

> *In case No. 74-590, judgment reversed in part and affirmed in part.*
> *In case No. 74-913, judgment reversed in part.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.