PATO FOODS, INC., APPELLANT, *v.* LINDLEY, TAX COMMR., APPELLEE.

(No. 44195—Decided June 14, 1982.)

*Mr. Joseph H. Weiss, Jr.,* and *Mr. Richard J. Makowski,* for appellant.

*Mr. William J. Brown,* attorney general, for appellee.

MARKUS, J. Vendor appeals from a decision of the Board of Tax Appeals, arguing that the Tax Commissioner should not calculate vendor's sales tax liability with percentage data obtained in a test check of a different business.[1]

---

[1] Vendor presents the following claimed errors:

"I. The Board of Tax Appeals erred in affirming the use of test checks against a taxpayer who was not in default of keeping sales records.

"II. The Board of Tax Appeals erred in affirming a sales tax assessment based upon a test check of the business of a vendor other than the taxpayer being audited.

"III. The decision of the Board of Tax Appeals to use the test checks of Gottlieb's Restaurant in making a sales tax assessment against the appellant was unreasonable and unlawful."

Because vendor's own records are not available, we affirm the board's decision allowing that procedure for comparable vendors.

Vendor operated a restaurant and delicatessen which sold food and beverages for consumption both on and off the premises. All sales for consumption on the premises and some sales for consumption off premises were subject to vendor's duty to collect and remit state sales tax. The Tax Commissioner discovered that vendor remitted tax for reported taxable sales at the precise nominal rate prescribed by law. A vendor's effective tax pursuant to the prescribed tax bracket table is seldom the same as the nominal rate,[2] so the Tax Commissioner sent an agent to investigate.

After the agent inspected vendor's premises, he made an appointment to review original sales records which would show the portion of total sales that were taxable. However, when the agent appeared to view those records, vendor's premises and records were engulfed in a fire that destroyed several business establishments.

Without access to original records, the agent sought to calculate vendor's tax liability by using vendor's total reported sales and statistical information obtained from comparable businesses. He needed to determine the portion of vendor's total sales that was taxable, and the effective tax rate experienced for sales of that nature by persons using tax bracket tables. Therefore, he averaged those percentages from data developed in test checks of two other nearby delicatessen restaurants.

Multiplying the average percent of taxable sales by vendor's total sales, he computed vendor's taxable sales. Multiplying the average effective tax rate by vendor's computed taxable sales, he

---

[2] See *McDonald's* v. *Kosydar* (1975), 43 Ohio St. 2d 5, 9 [72 O.O.2d 3].

determined the tax that should have been collected and remitted. The Tax Commissioner then assessed vendor the difference between the tax so calculated and the tax actually paid.

Vendor's objections to that assessment were overruled by the Tax Commissioner, so vendor appealed to the board. The board affirmed, but reduced vendor's assessment, after ruling that less favorable data from one of those two restaurants should not have been used to calculate vendor's tax. That restaurant was not sufficiently similar to vendor's business. Vendor appeals to this court from the board's decision pursuant to R.C. 5717.04.

I

Vendor first argues that a test check to verify sales tax returns is proper only where a business deliberately fails to maintain retail sales records. Vendor contends it kept adequate records until they were destroyed under circumstances beyond its control, so no test check was authorized. We disagree.

Test checks are discussed in R.C. 5739.10:

"* * * [W]here a vendor does not have adequate records of receipts from his retail sales in excess of fifteen cents or sales of food for human consumption on the premises where sold, the tax commissioner may refuse to accept the vendor's return and, upon the basis of test checks of the vendor's business for a representative period, and other information relating to the sales made by such vendor, determine the proportion that taxable retail sales bear to all his retail sales." (Emphasis added.)

Thus, test checks may be used to determine the taxable portion of retail sales whenever the vendor does not "have" adequate records, even though the vendor has not deliberately failed to maintain those records.

R.C. 5739.13 further provides:

"The commissioner may make an as-

sessment against any vendor who * * * fails to remit the proper amount of tax in accordance with the provisions of section 5739.12 of the Revised Code. *When information in the possession of the commissioner indicates that the amount required to be collected* under the provisions of section 5739.02 of the Revised Code is, *or should be, greater than the amount remitted by the vendor, the commissioner may upon the basis of test checks of a vendor's business for a representative period, which are hereby authorized, determine the ratio which the tax required to be collected under section 5739.02 of the Revised Code bears to the receipts from the vendor's taxable retail sales,* which determination shall be the basis of an assessment as herein provided in this section. Notice of such assessment shall be made in the manner prescribed in this section." (Emphasis added.)

In the present case, the Tax Commissioner noted that vendor apparently paid sales tax at the nominal statutory rate after collecting them at a presumably higher tax table rate. Cf. *Russo* v. *Donahue* (1967), 10 Ohio St. 2d 201 [39 O.O.2d 10]. Thus, the test check was also warranted because the commissioner concluded that vendor failed to remit the proper amount of sales tax. *Id.*

The first assignment of error is overruled.

## II

Vendor argues that a test check may only be made at the business for which the tax is assessed. We disagree. The applicable statutes should be construed to allow the Tax Commissioner reasonable use of meaningful information in assessing sales tax liability. In *Russo* v. *Donahue, supra,* at 212, the court stated:

"The general proposition as to what an administrative body must do where the taxpayer has no records is succinctly stated in *Mitchell Bros. Truck Lines* v. *Hill, Commr.,* 227 Ore. 474, 485, 363 P. 2d 49, as follows:

" 'It appears to be the general rule, *and common sense would dictate,* that if a taxpayer fails to keep proper records, or for some other reason exact information is unavailable, some formula must be devised to determine the tax established by legislative authority. *Vale* v. *Du Pont,* 37 Del. 254, 182 A. 668, 103 A. L. R. 946; *W. T. Grant Co.* v. *Joseph,* 2 N.Y. 2d 196, 140 N.E. 2d 244; *Mason and Dixon Lines* v. *Commonwealth,* 185 Va. 877, 41 S.E. 2d 16; *Gasper* v. *Commissioner of Internal Revenue,* 225 F. 2d 284.' " (Emphasis sic.)

Use of information obtained in a test check has been upheld even when the test check was made after the vendor's business was sold to a new owner. See *King Drug Co.* v. *Bowers* (1961), 171 Ohio St. 461 [14 O.O.2d 318]; *Staten* v. *Tax Commr.* (1975), 74 O.O. 2d 365.

Vendor's argument was raised in *McDonald's* v. *Kosydar* (1975), 43 Ohio St. 2d 5 [72 O.O.2d 3]. The court stated at pages 9-10:

"Taxpayers contend further that the Tax Commissioner improperly used an average of figures derived from a test check of four of appellees' outlets in the Columbus area to compute the assessment against the outlet in Springfield, Ohio.

"The relevant statutory provisions within R.C. 5739.10 and 5739.13 authorize assessments upon the basis of test checks of a 'vendor's business for a representative period.' In the case at bar, the test checks applied to the Springfield outlet were conducted at different locations outside Springfield. Clearly, they were not of the 'vendor's business' as required by the above statutory language. To be valid, a test check must be conducted under conditions which approximate, as nearly as possible, the conditions under which the business was operated by the taxpayer during the audit period. *Cherry Street Corp.* v. *Porterfield* (1971), 27 Ohio St. 2d 260 [56 O.O.2d 156], 272 N.E. 2d 124.

"Here, the commissioner does not assert, nor does the record indicate, that the four outlets used were comparable to the Springfield unit in their physical layouts (which could influence sales for consumption off the premises, depending on inside seating), or were situated in areas of a similar economic makeup (which could affect the volume of business). In light of the above, it is our finding that the Tax Commissioner did not satisfy the statutory requirement that the test check be of a 'vendor's business for a representative period,' and the assessment against the Springfield outlet, based upon those test checks, was improper."

In the last quoted paragraph, the court set forth criteria for comparing a vendor's business with a different business.[3] Those criteria were satisfied in the present case. The Tax Commissioner introduced evidence about the restaurants at which the test checks were made, including the proximity to this vendor and their comparable seating capacity, delicatessen size, and neighborhood characteristics.

Furthermore, R.C. 5739.13 provides that the Tax Commissioner "may make an assessment against * * * the vendor * * * based upon any information in his possession," where a vendor has failed to remit the proper amount of sales tax. In *Russo* v. *Donahue, supra,* at 214, the court held:

"Section 5739.13, Revised Code, imposes a duty upon the vendor both to collect and remit to the state the bracket tax imposed by Section 5739.02, Revised Code, and makes him subject to assessment and personally liable in the event he fails in either respect. Section 5739.11, Revised Code, imposes upon the vendor the duty to maintain records. The vendor has the burden of providing such records or of being assessed on the basis of test checks *or of any other information in the possession of the Tax Commissioner.*" (Emphasis added.)

Hence, the information obtained from test checks of similar businesses may be used by the Tax Commissioner as "other information" in his possession.

"* * * [I]t is presumed that all sales made in this state are subject to the tax until the contrary is established." R.C. 5739.02. Therefore, vendor would be responsible for tax on all sales, since it no longer has original records to verify the extent of tax-exempt transactions, if some means were not used to estimate the percent of tax-exempt sales.

Therefore, the second assignment of error is overruled.

### III

Finally, vendor argues that the board acted unreasonably and unlawfully by concluding that the test check ultimately used was for a similar business and a representative period. This argument lacks merit.

In *Cherry Street Corp.* v. *Porterfield* (1971), 27 Ohio St. 2d 260 [56 O.O.2d 156], the syllabus states:

"In order for a test check conducted pursuant to R.C. 5739.10 to be valid, it must be conducted under conditions which approximate, as nearly as possible, the conditions under which the business being checked was operated during the audit period."

Whether the test check was representative is a factual question for determination by the board. *King Drug Co.* v. *Bowers, supra,* at 463; *Staten* v. *Tax Commr., supra,* at 368. The board has wide discretion to evaluate the weight given to evidence and the credibility of witnesses. *Cardinal Federal S. & L. Assn.* v. *Bd. of Revision* (1975), 44 Ohio St. 2d 13 [73 O.O.2d 83], paragraph three of the syllabus. A reviewing court is limited by R.C. 5717.04 to ruling whether the decision of the board is unreasonable or unlawful. *3535 Salem Corp.* v. *Lindley* (1979), 58

---

[3] Cf. *Servomation Corp.* v. *Kosydar* (1976), 46 Ohio St. 2d 67, 70 [75 O.O.2d 147].

Ohio St. 2d 210, 212 [12 O.O.3d 203]; *Staten* v. *Tax Commr., supra,* at 366.

At the hearing before the board, the Tax Commissioner's agent testified that he computed vendor's assessment from figures obtained in test checks of two other restaurant-delicatessen businesses. He testified that those restaurants were similar to vendor's restaurant, and were located in areas with "similar types of people." The agent admitted that one of the restaurants was much larger, and the figures obtained from that restaurant were subsequently rejected by the board for use in assessing vendor's tax.

The Tax Commissioner did not attempt to develop data from vendor's own business when it was rebuilt after the fire, because vendor eliminated most sales for off premises consumption when it reactivated its business. Data from the next business would have been unfair to vendor for this analysis, since the tax-exempt sales were no longer a substantial factor.

A vendor has the burden of proving that the Tax Commissioner's assessment was erroneous. *Ohio Fast Freight* v. *Porterfield* (1972), 29 Ohio St. 2d 69, 71 [58 O.O.2d 116]. Vendor failed to introduce any evidence that its business was dissimilar to the restaurant at which the approved test checks were accomplished, nor did it show that more accurate information could have been obtained by some other method.

For the foregoing reasons, the third assignment of error is overruled, and the decision of the board is affirmed.

*Decision affirmed.*

PRYATEL, C.J., and CORRIGAN, J., concur.