**SPRING HILL NURSERIES, INC., Appellant,**

v.

**LIMBACH, Tax Commr., Appellee.**

[Cite as *Spring Hill Nurseries, Inc. v. Limbach* (1991), 75 Ohio App.3d 460.]

Court of Appeals of Ohio,
Miami County.

No. 90–CA–40.

Decided Aug. 7, 1991.

*Thompson, Hine & Flory* and *Peter J. Donahue,* for appellant.

*Lee I. Fisher,* Attorney General, and *M. Linda Weigand,* Assistant Attorney General, for appellee.

BROGAN, Judge.

This is an appeal by Spring Hill Nurseries, Inc. from a decision of the Board of Tax Appeals affirming an order of the Tax Commissioner of Ohio that Spring Hill owed additional sales and use taxes and penalties for the years 1979, 1980 and 1981 in the amount of $170,945.28.

The appellant asserts the following four assignments of error:

"The Ohio Board of Tax Appeals ('the board') erred in the finding that the primary records, secondary records and summary records of the appellant were not adequate and that the method selected by the Tax Commissioner to identify sales was reasonable.

"The board erred in its determination that pursuant to Ohio Revised Code § 5739.01(B) sales occurred at the time of acceptance of orders rather than the time of shipment.

"The board erred when it failed to allow certain correcting journal entries that would have reduced the difference between sales tax reported and sales tax due.

"The board erred in refusing to abate the penalty of 15% of sales tax."

Spring Hill is a wholly owned subsidiary of Foster and Gallagher, Inc. of Peoria, Illinois, engaged in the direct mail order solicitation of sales of horticultural products. Spring Hill is divided into subsets, one dealing in imported bulbs and known as "Brecks" and the other dealing in nursery products and known as "Spring Hill."

The direct mail catalogs are mailed well ahead of the appropriate planting season. After reviewing the catalog, the customer identifies the product, the price, sales tax where applicable, shipping and handling charges, insurance where desired, and totals the amount of the order. The customer then enters the preferred mode of payment, to wit, "after delivery," "credit card," or "payment enclosed," and mails the order.

When the appellant receives the order in Peoria, it keypunches the information from the order form into its computer data base. The information includes the customer's name, address, phone number, and customer identification number. The system then checks the information for keypunch errors and "bogus orders." The computer is used to control over a million reservations nationally. After it keypunches and verifies the information, the appellant then disposes of the order or reservation forms. From the key-punched information, the computer prints "acknowledgements," which the appellant sends to the customer.

As the time for shipment nears, the data base information is retrieved and the computer produces multipart forms which are sent to the shipping points, Tipp City and Holland. The forms include a shipping label, a remittance invoice, a station number locating the product and a "tear strip," which shows the shipment has been completed. The tear strip is returned to the reservation center, the information is entered into the computer, audited for balancing, and the tear strips are destroyed.

Tax computations made by the computer are subsequently posted to the general ledger. Adjusting journal entries are prepared by appellant to correct errors made in posting.

Kenneth Karman, a certified public accountant and accounting manager at Foster and Gallagher, testified that certain adjusting entries were made to reflect improper posting to the sales tax payable account. He noted that two adjusting entries of $11,200 and $5,703.89 had been made for incorrect posting by Spring Hill but were not allowed by the auditors.

With respect to calendar year 1981, Karman explained that sales taxes were erroneously being paid when orders were received instead of when shipments were made. Thus, sales tax remittance on a monthly basis did not match orders shipped and recorded as sales, and thus adjusting entries were made.

The appellee argues that although the appellant claims the sales tax payable shown on its general ledger did not reflect the sales tax due, it offered no conclusive documentation to support that claim. (The board did allow an adjustment of $53,313 to the sales tax due for the year 1980 because of an erroneous posting of a franchise tax liability to the sales tax account.)

The appellant maintains no sales invoices, order forms or shipping forms for its mail order sales. It maintains secondary records, such as accounts receivable ledgers, the computerized general ledger, chart of accounts and statements of income.

Agents noted that the computerized general ledger reflected different information than that reflected by the appellant's sales tax returns and its records. Specifically, the monthly entries in the sales tax payable account reflected different sales tax than its tax return. Second, the gross sales, exempt sales, and taxable sales reported on the tax return for the audit period were inconsistent with the general ledger. The agents contended that they could not verify the amount of sales tax due as shown by the general ledger and tax return because the appellant had failed to keep its primary records. The Tax Commissioner could not trace the amounts shown on the appellant's sales tax payable account to the actual records kept in Tipp City, Ohio. The state alleges that the appellant did not record the sales tax at the time of shipment, but rather backed the sales figure on the return from the amount of tax collected.

The board held that the Tax Commissioner's basis for assessment, the credit entries in appellant's sales tax payable account, was reasonable. Pursuant to R.C. 5717.04, this court's review is limited to a determination of whether the board's finding was reasonable and lawful. *Federated Dept. Stores, Inc. v. Lindley* (1983), 8 Ohio St.3d 35, 8 OBR 344, 456 N.E.2d 1209.

The board held at the urging of the commissioner:

" * * * the taxable 'sale' for Ohio Sales Tax purposes occurs at that point after the Ohio customer responds to appellant's invitation to purchase (catalogue) by ordering appellant's product (and, either remitting payment or promising to pay therefor), and when appellant receives the order and acknowledges in writing its obligation to provide the product purchased."

Spring Hill contends that the "sale" occurs not when the customer's order is acknowledged, but at the point where it makes the shipment to the purchaser because it is only then that the purchaser is obligated to pay the price agreed for the order. In support of its order, it cites R.C. 5739.01(O), which provides in part that " '[m]aking retail sales' means the effecting of transactions wherein one party is obligated to pay the price and the other party is obligated to provide a service or to transfer title to or possession of the item sold."

Appellant contends that the reservation is an offer to purchase nursery stock and the offer is accepted when the stock is shipped. Appellant argues that since no payment is required or requested until the stock is shipped, the sale is consummated upon shipment and the tax collectible at that point.

Appellant also points to R.C. 1302.42(A), which provides that title to goods passes from the seller to the buyer in any manner and on any condition explicitly agreed on by the parties. R.C. 1302.42(B) provides that unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods.

In *De Ville Photography, Inc. v. Bowers* (1959), 169 Ohio St. 267, 8 O.O.2d 281, 159 N.E.2d 443, at paragraph two of the syllabus, the Ohio Supreme Court held as follows:

"Under the provisions of Section 5739.01, Revised Code, a 'sale' occurs when one person becomes obligated under a contract to pay the 'price' and another becomes obligated to 'transfer tangible personal property'[;] and by virtue of Section 5739.02, Revised Code, the Ohio sales tax applies and is collectible as of the time of such sale regardless of the time when the price is actually paid or the property actually transferred."

In *Lakeside Truck Rental, Inc. v. Bowers* (1962), 173 Ohio St. 108, 18 O.O.2d 357, 180 N.E.2d 140, the Ohio Supreme Court held that there is no "sale" within the meaning of R.C. 5739.01(B) until there is a transfer of either possession or title. The case involved the question of whether trucks used by a vendor in making deliveries of items sold to retail customers are used "directly in making retail sales" within the meaning of those words found in R.C. 5739.01(E) defining "retail sale." The court found that the rental of the

trucks would not amount to a retail sale if the purpose of the consumer was to use the thing transferred (the truck) directly in making retail sales. The court held that there would be no tax on the rental paid by the furniture dealer to the appellant for the truck. The court noted that the trucks were used to deliver items sold to retail customers under contracts of sale not to be completed until the deliveries of the furniture had been made.

In *Arga Co. v. Limbach* (1988), 36 Ohio St.3d 220, 522 N.E.2d 1074, the Ohio Supreme Court held that the situs of a "retail sale" under the county permissive sales tax, R.C. 5739.021, was in Franklin County because the "agreement" was made there and because the transfer of title of and possession of the airplane which was sold by a Montgomery County company occurred in Franklin County, citing R.C. 1302.42(B)(2).

The appellant has presented convincing evidence that the customer does not become obligated to pay for the items ordered until the appellant has shipped the item. Evidence of the shipment and its price was contained in the tear slips. The tear slips are then keyed into the appellant's computer for billing purposes. The computer entry from the tear slips in effect became the "primary record."

Ohio Adm.Code 5703-9-02(A) requires the taxpayer to maintain the following records:

"Each vendor must maintain complete and accurate records which include *both:*

"(1) *Primary records* such as purchase invoices, bills of lading, sales invoices, guest checks, exemption certificates, tax payment receipts, and cash register tapes;

"(2) Secondary records such as bank deposit receipts and day books, journals, or any other records in which accumulated data is recorded.

*"Any record in which accumulated data is recorded by the vendor must be supported by complete detail records from which such data was accumulated.*

" * * *

"All records must be preserved for a period of four years unless the Commissioner consents, in writing, to their destruction within that period." (Emphasis added).

R.C. 5739.11 provides that:

"Each vendor shall keep complete and accurate records of sales, together with a record of the tax collected on the sales * * * and shall keep all invoices, bills of lading and other pertinent documents.

In *McDonald's v. Kosydar* (1975), 43 Ohio St.2d 5, 72 O.O.2d 3, 330 N.E.2d 699, the Ohio Supreme Court in a *per curiam* opinion held that the record-keeping requirements of R.C. 5739.11 must be construed in a manner which will allow the Tax Commissioner to determine if sales taxes which should have been charged by vendors were actually collected and remitted to the State Treasurer. The record will undoubtedly vary according to the item or product sold, *e.g.*, cash register tapes for restaurants as in *McDonald's, supra,* 43 Ohio St.2d at 8, 72 O.O.2d at 5, 330 N.E.2d at 702.

The appellant contends that its computerized general ledger which reflected the sales of items shipped to the appellant's customers should be regarded as "primary" evidence.

Evid.R. 1003 provides that any printout or other output readable by sight from a computer or electronic device is an "original" if the printout accurately reproduces the data that is stored. The commissioner failed to demonstrate why the computer database taken from the tear slips should not be acceptable as "primary evidence."

Agents determined that the credit entries in the sales tax payable account of the general ledger were the best available record of the appellant's tax liability. See R.C. 5739.13.

The appellant contends that it erroneously prepaid sales tax in 1981 based on reservations rather than actual shipments. The board's determination that only the reservations forms are primary records effectively prevents the appellant from making the adjustments necessary to reflect its actual sales or shipments of stock to its customers. This action by the board was unreasonable.

The appellant should be given the opportunity to demonstrate with the use of its computer records that the adjustments it made upon its secondary records were proper. The assignments of error are sustained.

The decision of the board is reversed and the cause is remanded to the Board of Tax Appeals for further proceedings.

*Decision reversed and cause remanded.*

GRADY, J., concurs.

WOLFF, J., concurs separately.

WOLFF, Judge, concurring separately.

I would overrule the second assignment of error. In my judgment, the board reasonably concluded that the sales occurred when Spring Hill acknowl-

edged its customers' orders. The board could have reasonably determined that mutuality of obligation arose at the time of these occurrences. See R.C. 5739.01(O). I otherwise concur in the majority opinion to the extent that it is not inconsistent with the foregoing, and I concur in the judgment.