■ In the Matter of BABYLON MILK & CREAM CO. INC., Petitioner, against GEORGE M. BRAGALINI et al., Constituting the New York State Tax Commission, Respondents.— Proceeding to review a determination of the State Tax Commission denying petitioner's application for a refund or revision of taxes imposed pursuant to article 21 of the Tax Law (Highway Use Law). Upon a field audit of the Truck Mileage Tax Bureau, the auditors found that the petitioner had understated the mileage which its tank truck-trailers had traveled on New York highways during the year 1953. In order to ascertain the

amount of the additional tax owing, the auditors made a test-check for the months of March, July, November and December, those months being regarded as representative of the high, low and intermediate points in the seasonal variations in the milk industry. The auditors determined the distance between the petitioner's plant and pickup points on the petitioner's regular routes for the test month and they found that the length of the trips had been understated by the petitioner in determining the mileage tax. By a process of computation, the auditors determined that the total mileage had been understated by an average of 29.59% for the four months and they then applied this percentage to the remaining eight months of 1953. The petitioner does not dispute the accuracy of the determination with respect to the four test months but it challenges the right of the respondent to determine the amount of the understatement with respect to the other eight months by applying the percentage formula. The records of the petitioner were all available for the year 1953 and the exact amount of the understatement of mileage could have been determined for the remaining eight months in the same manner in which it was determined for the four months chosen for the test months. The only reason given for not determining the understatement in this manner was that it would have required additional work. It is true that certain trips recurred from time to time throughout the year but the number of trips between particular points varied from month to month. The use of the average method, at best, produced only an approximation of the amount of the tax owing. While it has been held that a taxpayer challenging a tax assessment must not only demonstrate that the assessment is erroneous but must establish the extent of the error (*People ex rel. Kohlman & Co.* v. *Law,* 239 N. Y. 346), there is a well-recognized exception to this rule which seems to us to cover this case. If the taxpayer demonstrates that " the Commission in stating the account has proceeded upon a principle fundamentally erroneous ", the assessment may be set aside and the case remitted to the commission for redetermination, without proof by the taxpayer of the exact amount of overassessment which has resulted from the use of the erroneous theory or method (*People ex rel. Kohlman & Co.,* v. *Law, supra,* p. 352). The same rule prevails in the Federal courts (*Gasper* v. *Commissioner of Internal Revenue,* 255 F. 2d 284). There was no justification in this case for the use of a percentage formula to estimate the amount by which the tax was understated, in view of the fact that all the records were available and the exact amount could have been determined therefrom. The method used being an improper one, the taxpayer was not called upon to establish that the result produced by its use was different from that which a detailed examination would have produced. This part of the assessment should therefore, be annulled and the matter remitted to the State Tax Commission for further proceedings. The remaining part of the assessment is based upon the failure of the petitioner to pay truck mileage taxes for 13 delivery trucks (as distinguished from tank truck-trailers). The petitioner had not registered these trucks in accordance with the Highway Use Tax Law and had made no returns with respect to them. The petitioner claimed that all records of the use of the trucks for 1951 to 1953 had been destroyed. The president of petitioner testified that he believed, on the basis of random tests, that the gross weight of the trucks was less than 18,000 pounds but he admitted that the total of the weight of each unladen truck and its maximum carrying capacity was far in excess of 18,000 pounds. The Highway Use Tax is imposed by the statute on all trucks having a gross weight of over 18,000 pounds. From October 1, 1951 to July 1, 1953, gross weight was defined by section 501 of the Tax Law as meaning " the weight of the motor vehicle plus

the weight of the maximum load which such motor vehicle may carry ". (L. 1952, ch. 636, § 6.) As of July 1, 1953, the definition of the term gross weight was amended so as to provide that it meant "the weight of the motor vehicle plus the weight of the maximum load to be carried" by it (L. 1953, ch. 6, § 11). The auditors estimated the amount of the tax in accordance with these definitions for the period from October 1, 1951, to December 31, 1953. They used in this process the records for a period of two weeks in 1954, shortly before the date of the examination, which were the only records the petitioner supplied them. They also used information obtained from other milk dealers and from their own tests as to the weight of cans of milk and cases of milk and the number of cans or cases carried on a truck. The result reached by the auditors was consistent with later findings made when the trucks and loads were weighed in 1954 and 1955. The method used by the auditors was a reasonable one in view of the petitioner's failure to keep any records. The petitioner has not demonstrated that the amount of the assessment was to any extent unjustified. The determination of the additional highway use tax payable for the tank truck-trailers is annulled and the matter is remitted to the State Tax Commission for further proceedings; the determination of the amount of the additional tax payable for the delivery trucks is confirmed, all without costs. Foster, P. J., Bergan, Coon, Halpern and Gibson, JJ., concur.