Argued April 12, affirmed in part reversed in part and remanded
with instructions June 21, petition for rehearing denied
July 10, 1961

MITCHELL BROS. TRUCK LINES *v.* HILL,
PUBLIC UTILITY COMMISSIONER

363 P. 2d 49

*E. Wayne Cordes,* Portland, argued the cause for appellant. With him on the briefs were White, Sutherland and White, Portland.

*John F. Weisser,* Assistant Attorney General, Salem, argued the cause for respondent, cross-appellant. With him on the briefs were Robert Y. Thornton, Attorney General, and Lloyd G. Hammel, Assistant Attorney General.

Before McALLISTER, Chief Justice, and ROSSMAN, WARNER, PERRY, SLOAN, O'CONNELL and GOODWIN, Justices.

PERRY, J.

The plaintiff, as a motor carrier of freight, is required by law to pay a tax for the use of the public highways. The defendant (hereinafter referred to as the "commissioner") caused an audit to be made of the plaintiff's reported operations from June, 1949, to and including December, 1952, and as a result of this audit additional taxes with interest were assessed against plaintiff. Plaintiff was duly notified of the assessment and pursuant to ORS 767.365 plaintiff filed its petition for reconsideration of the assessment. Hearings were had on plaintiff's petition and the commissioner, with some minor modifications, approved his prior order. The plaintiff then appealed to the Circuit Court of the State of Oregon for Marion County and that court approved the commissioner's order in part and disapproved of that portion wherein the commissioner's audit disclosed that for the period from January 1, 1951, to March 31, 1952, the commissioner had assessed

the plaintiff on the basis of 7.38 per cent of error in underreporting. The percentage of 7.38 per month was arrived at by a complete audit for three months of this period and the percentage was then applied to each month of the entire period from January 1, 1951, to March 31, 1952.

From the judgment of the trial court the plaintiff has appealed and the commissioner has cross-appealed.

The plaintiff asserts the trial court erred (1) in affirming in part and vacating in part the administrative order; (2) in admitting into evidence and considering an exhibit which consisted of a recapitulation of the original audit with modifications based upon information given at the commissioner's hearing on plaintiff's petition for rehearing; (3) in sustaining the commissioner's order where there was no specific findings of fact to the effect that plaintiff's method of reporting was improper; (4) in sustaining the commissioner's order authorizing additional tax without specific findings of fact; (5) in sustaining the commissioner's order which fails to give consideration and credit for overages made by plaintiff in reporting; (6) in sustaining the commissioner's order where no effective date is set forth in the order; and (7) in sustaining the commissioner's order which is based on an audit more detailed than is customarily and usually performed.

Before considering the specific contentions of the parties, it is necessary to consider the statutes which provide a tax for motor carriers for use of the highways.

■ ORS 767.325, as far as pertinent to this matter, reads:

"(1) In addition to the license fees and taxes otherwise imposed by law upon common carriers,

contract carriers and private carriers there shall be assessed against and collected from every such carrier a tax for the use of the highways, to apply on the cost of administration of this chapter and for the maintenance, operation, construction and reconstruction of public highways.

"(2) The tax rate which shall apply to each motor vehicle shall be based upon the declared combined weight of the motor vehicle and in accordance with the weight group tax rates as shown in the tables set forth in ORS 767.330. *  *  *"

ORS 767.330 sets forth millage rate to be paid by the carrier for each mile of travel upon the highway.

ORS 767.005(3), for carriers of freight, defines combined weight as follows:

" 'Combined weight' means the weight of the motor vehicle plus the weight of the maximum load which such motor vehicle may carry, as declared by the applicant, subject to audit and approval by the commissioner. *  *  *"

The words "may carry" used in this act are not used (as argued by the plaintiff) to indicate the weight of the cargo proposed to be carried in a vehicle by the carrier, but are used in the sense of the maximum gross weight permissible by law for the vehicle to carry. The maximum weight which may be placed upon the highways of the state in the use of motor vehicles is fixed and determined by the legislature, subject to the right of the State Highway Commission to grant special permits under certain circumstances. ORS 483.524; ORS 483.525.*

The maximum weight which may be placed upon the highways as provided in ORS 483.524 is the weight of the vehicle or combination of vehicles and equipment

---

* The specific maximum weights set out in ORS 483.524 are not applicable for the period in controversy. For exact maximum weights for period see Oregon Laws 1949, ch 450, and Oregon Laws 1951, ch 405.

together with a load weight which is determined by measurement from axle to axle and is the equivalent of combined weight defined in ORS 767.005(3).

The statutes thus set out an exact mathematical formula for determining the tax to be paid by the carrier for the use of the highway. The combined weight determines the mile millage rate as provided in the tax tables set out in ORS 767.330, and this mile millage rate multiplied by the miles traveled determines the amount of tax to be paid by the carrier.

For example, the permissible maximum load weight that may be carried on the highway when added to the weight of the vehicle equals the statutory definition of "combined weight." By reference to the tables set out in ORS 767.330, the fee in mills for a mile traveled by the vehicle is fixed for each particular weight and the fee for the combined weight multiplied by the number of miles traveled equals the fee to be paid by the carrier for the use of the highway.

The act then specifically provides that in the first instance the carrier shall declare the combined weight of his vehicle, which is subject to verification and approval by the commissioner. The carrier must then, using the combined weight declared, multiply the millage miles traveled, report and pay the monthly use taxes due. If the commissioner is not satisfied with the "report filed or amount of tax paid" and he believes the full amount of tax due as provided by legislative enactment has not been paid, he may then, based upon the information available, make a proposed assessment to correct the deficiency. ORS 767.355.

The proposed assessment is subject to review at the request of the motor carrier. ORS 767.365.

■ We will now consider plaintiff's first assignment of error.

ORS 756.580(1) provides:

"Parties to any proceedings before the commissioner may, when aggrieved by any findings of fact, conclusions of law or order, including the dismissal of any complaint or application by the commissioner, prosecute a suit or proceedings against the commissioner to modify, vacate or set aside such findings of fact, conclusions of law or order."

The plaintiff seems to argue that, although it is apparent the legislature has provided the courts shall have the power to modify an order of the commissioner, the courts only obtain jurisdiction to modify an order when the appealing party makes a specific request for such relief.

We cannot attribute to the legislature such a narrow purpose. In our opinion, the purpose of the statute is to grant to the courts a full scope of review to administer the relief appropriate to the cause.

The plaintiff further argues that the courts will not modify the order of a public administrative body; citing *Roseburg Lumber Company v. State Tax Commission*, 223 Or 294, 355 P2d 606; *Illinois Commerce Com. v. New York Central R.R. Co.*, 398 Ill 11, 75 NE2d 411.

The law of the case of *Illinois Commerce Com. v. New York Central R.R. Co.*, supra, is not applicable under the appellate review procedure provided in this state for appeals from rulings of the Public Utilities Commissioner. The statute of Illinois provided only that the circuit court might inquire into the "reasonableness or lawfulness of the order or decision." No power was granted the circuit court to modify. The circuit court was required to find the order or decision of the commission reasonable or unreasonable, lawful or unlawful.

The plaintiff relies upon our language in *Roseburg Lumber Company v. State Tax Commission,* supra, 223 Or 294, 355 P2d 606, 614:

"* * * This court does not intend to substitute its judgment for that of the commission. The order will not be revised in court; it is either valid or it is void."

This statement does not limit the power of the courts to modify the orders of the commission. A reading of the opinion discloses the action of the commission was arbitrary, not based upon acceptable methods of determining tax assessments, and was, therefore, void. Also, as is pointed out therein, there were no findings of fact presented by the commission upon which a court could determine the "modus operandi" by which the commission reached its decision.

■ When there are no findings of fact or they are insufficient to advise the courts of the facts found to be true to which the law has been applied, the courts will not choose between conflicting inferences and guess as to the facts which influenced the judgment of the administrative body. *Roseburg Lumber Company v. State Tax Commission,* supra; *Valley & Siletz R.R. Co. v. Flagg,* 195 Or 683, 247 P2d 639.

Concisely stated, the courts will not review the orders of public administrative bodies that have failed to comply with statutes requiring findings of fact and conclusions of law, but will hold orders made without meeting these requirements void.

■ However, where the Public Utility Commissioner has made sufficient findings of fact and conclusions of law, the language of ORS 756.580(2), which confers jurisdiction upon the circuit courts to "hear and determine such suit[s]," when considered in con-

junction with the power to "modify, vacate or set aside such findings of fact, conclusions of law or order," (ORS 756.580(1)) the courts may enter a final decree and are not limited to a remand to the commissioner.

In the matter before us, it is quite apparent the use-tax to be paid by carriers is based upon each month's use of the highways. Common sense dictates that it would be almost an impossibility for the Public Utility Commissioner to audit and approve each month the reports as they arrive. There is nothing in general law of the language of the statutes which would indicate other than that he may audit the carrier's reports at his convenience. However, the audit and approval refers to each separate report made by the carrier and is, in effect, separable from the other monthly reports. Each report and audit being separable and so set out in the findings of fact, the trial court may approve or disapprove of a single monthly report separate from the total amount as stated in its entirety.

■ The findings of fact entered by the commissioner disclose that for the period of time covered by the order, with the exception of those months from January 1, 1951, to March 31, 1952, where the commissioner assessed the plaintiff on a percentage basis, the combined weight of the particular vehicle and the excess miles traveled by a particular vehicle are set forth, also, whether the additional assessment was for failure to report the proper combined weight or mileage or both. As to those months where a percentage basis was used, the commissioner stated in his findings of fact the method used to arrive at this basis.

We do not know how more specific findings of fact could be made than were made. There is no merit in plaintiff's assignments of error 3 and 4.

We also find no merit in plaintiff's other assignments of error.

The commissioner has cross-appealed from that portion of the trial court's judgment which set aside the reassessment based on a percentage adjustment.

■ The facts disclose the commissioner, through his auditor, carefully audited the records of the plaintiff during the months of March, July and December in 1951, and found that on the average of these three months there was a deficiency in reporting the tax of 7.38% per month. Using this percentage of 7.38 deficiency as a figure for underreporting, this figure was applied to the fifteen months of reports from January 1951 to March 31, 1952. As to the months not audited, the auditor testified that he made a spot check and was satisfied approximately the same errors appeared in the reporting each month. He also testified as follows:

"Q. On your percentage adjustment increase, what specific authority did you have for proceeding in that fashion?

"* * * * *

"A. I received instructions from my direct superior, Mr. Hansen of the Portland office to do this, if it was agreeable to Mr. Schons.

"Q. Did Mr. Schons ever agree to that?

"A. Yes he did.

"Q. Are you quite sure?

"A. Yes, I talked to him about it and discussed the months that I felt were representative, and would take a heavy month and a light month and a medium month and asked him if that would be agreeable and he said it was all right.

"Q. You heard his previous testimony?

"A. Yes, sir.

"Q. And he said there was no agreement about it. He said they would let you make the audit

and then reaudit it themselves. Was that his testimony?

"A. Well, it was something similar to that, but he agreed to it at the time I brought it up, because I wouldn't do it without an agreement with the carrier. I didn't arbitrarily do it on my own.

"Q. In all cases do you obtain the agreement of the carrier?

"A. Yes sir. It will not be done otherwise."

With reference to this method, the plaintiff's managing officer testified as follows:

"Q. Well, at any time during this audit did you agree to such a procedure?

"A. I made acknowledgement of what he explained to me but I did not agree to any billing to this audit whatever. We had discussion and I didn't argue any further but rather let them submit what they had and we would look at it after that."

■ It appears to be the general rule, and common sense would dictate, that if a taxpayer fails to keep proper records, or for some other reason exact information is unavailable, some formula must be devised to determine the tax established by legislative authority. *Vale v. Du Pont,* 37 Del 254, 182 A 668, 103 ALR 946; *W. T. Grant Company v. Joseph,* 2 NY2d 196, 140 NE 2d 244; *Mason and Dixon Lines v. Commonwealth,* 185 Va 877, 41 SE2d 16; *Gasper v. Commissioner of Internal Revenue,* 225 F2d 284.

When such situations are encountered, the courts will presume a formula adopted by an administrative body is calculated to reach a reasonable result. However, if the formula adopted is shown by the taxpayer to be arbitrary or based upon erroneous principles which will not reasonably reflect the tax due, the assessment will be declared void. *Roseburg Lumber Company v. State Tax Commission,* supra.

The record in this case discloses that the taxpayer maintained reasonably accurate records from which to ascertain, in accordance with the statutes, the amount of tax due. Under these circumstances, we can observe no reason for using a percentage basis for assessment of the tax, and, if this were all that appeared, we would be constrained to sustain the decision of the trial court. *Application of Babylon Milk & Cream Co.,* 169 NYS2d 124, 152 NE2d 672.

Whether or not the plaintiff actually agreed to the method of audit is in dispute, however, it clearly appears from the record, the plaintiff was informed of the commissioner's intent to cause the audit to be made, using three months as a representative sample for the entire period for approval or not for this 15 months' period. When the taxpayer was apprised of the proposed method of audit, it seems to us a duty arose to either approve or reject the proposal at that time. It does not seem proper that the taxpayer may sit back and, in the absence of any showing that the method used did not reasonably reflect the true amount of tax due, now complain.

That portion of the judgment of the trial court appealed from by the plaintiff is affirmed, and that portion from which the defendant commissioner has cross-appealed is reversed. The cause is remanded with instructions to enter judgment sustaining the commissioner's assessment.