**SDDS, INC., a South Dakota corporation, Plaintiff and Appellant,**

v.

**STATE of South Dakota, and Mark Barnett, Attorney General for the State of South Dakota, Defendants and Appellees.**

**No. 17545.**

Supreme Court of South Dakota.

Argued Oct. 22, 1991.

Reassigned Dec. 30, 1991.

Decided Feb. 19, 1992.

Marvin D. Truhe and Dale R. Cockrell of Marvin D. Truhe Law Offices, Rapid City, for plaintiff and appellant.

Mark Barnett, Atty. Gen., Pierre, for defendants and appellees; John E. Haak, Asst. Atty. Gen., Pierre, on the brief.

MILLER, Chief Justice (on reassignment).

In this appeal, we affirm the trial court and hold that a certain enactment of the legislature may only become effective through the specified constitutional and statutory processes and thus the solid waste facility affected thereby may not become operational until after the results of the 1992 general election.

FACTS

South Dakota Disposal Systems (SDDS) is a South Dakota corporation organized for the purpose of constructing, operating and owning municipal solid waste balefill facilities. On September 21, 1989, the South Dakota Board of Minerals and Environment (Board) granted a one-year permit to SDDS to construct and operate a balefill facility near Edgemont, South Dakota, known as "Lonetree."[1]

On April 26, 1990, pursuant to SDCL ch. 2–1, initiative petitions were filed with the Secretary of State. At the general election on November 6, 1990, the South Dakota electorate adopted this initiated measure, known as "Initiated Measure 1." It became effective on November 21, 1990, and provides, in relevant part:

Section 1. No large scale solid-waste facility may be sited, constructed or operated in this state *unless the Legislature enacts a bill approving the siting, con-*

*struction or operation of such facility* pursuant to a solid waste permit or permit renewals, issued by the board of minerals and environment. (Emphasis added.)

.   .   .   .   .

Section 3. The board of minerals and environment shall cause any existing large-scale solid waste facility to cease operation *unless or until legislative approval as prescribed in this Act has been obtained.* (Emphasis added.)

The initiated measure defined a large-scale facility as one which would dispose of over 200,000 tons of solid waste per year.

On December 5, 1990, Board issued a renewal permit to SDDS, which allowed SDDS to operate Lonetree for the next five years and dispose of up to 7.75 million tons of baled municipal solid waste. In late February, 1991, both houses of the South Dakota Legislature passed Senate Bill No. 169 (SB 169) specifically approving the siting, construction and operation of Lonetree.[2] The Governor signed the bill on February 28, 1991.

Opponents of the Lonetree project began circulating referendum petitions (pursuant to SDCL 2–1–3 et seq.) seeking to refer SB 169 to a vote of the people. On May 8, 1991, the Secretary of State notified the Attorney General that the petition had been filed with the requisite signatures to refer SB 169 to a popular vote. Therefore, under SDCL 2–1–3, SB 169 cannot take effect unless it is approved by the electorate in the 1992 general election.

---

1. This court, in *Matter of SDDS, Inc.,* 472 N.W.2d 502 (S.D.1991), reversed the Department of Water and Natural Resources which had granted the first permit to SDDS. We additionally ordered Department to make entry of more particular findings on the public interest and environmental safety issues in the case as required by statute and its rules.

2. SB 169, codified as SDCL 34A–6–57, provides: ENTITLED, An Act to approve the siting, construction and operation of the Lonetree solid waste disposal facility.
BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF SOUTH DAKOTA:
The Legislature hereby finds that the Lonetree solid waste disposal facility is *environmentally*

*safe and in the public interest* and approves the siting, construction and operation of the Lonetree solid waste disposal facility near Edgemont, South Dakota, subject to the terms and conditions of permit number 89–7 and permit renewal number 90–20 granted by the board of minerals and environment for the facility. The department of environment and natural resources shall make daily inspections of representative samples of solid waste accepted for disposal at the Lonetree solid waste disposal facility for the purpose of monitoring the characteristics and composition of materials accepted at the facility. (Emphasis added.)

Despite the foregoing, SDDS took the position that when the South Dakota Legislature passed SB 169, it (SDDS) had fully complied with the requirements of the initiated measure and could therefore become fully operational. In reality, under SDDS' theory, SB 169 is not subject to referendum. State disagreed, arguing that since under South Dakota law SB 169 did not immediately go into effect, and due to the timely filing of the initiative petitions, SDDS could not be authorized to commence operations of the facility until after the 1992 general election. The trial court agreed with the State. This appeal followed. We affirm.

## DECISION

■ SDDS argues that the 1991 legislative approval of Lonetree by the legislature's "enactment" of SB 169 in February, 1991, immediately satisfied the requirements of Sections 1 and 3 of the initiated measure which required that no large-scale facility may be operated unless the legislature "enacts a bill" approving such operation. SDDS contends that the legislature approved Lonetree when it "enacted" SB 169 in February, 1991, and that the delay provisions of Article III, § 22 and SDCL 2–14–16 (quoted later herein) apply only to the effective date of an *act* or *law* (not a bill).

In contrast, State argues that "enactment" includes the entire process of legislative enactment, gubernatorial approval, and referendum when referendum petitions are properly filed. State contends that although SB 169 was passed by the legislature in February, 1991, legislative approval pursuant to Article III, § 22 and SDCL 2–14–16 did not become effective until July 1, 1991.

Article III, § 22, provides:

No act shall take effect *until ninety days after the adjournment of the session at which it passed,* unless in case of emergency, (to be expressed in the preamble or body of the act) the Legislature shall by a vote of two-thirds of all the members elected of each house, otherwise direct. (Emphasis added.)

SDCL 2–14–16 provides:

Subject to the provisions of the Constitution and statutes relating to vetoes and the referendum, an act of the Legislature which does not prescribe when it shall take effect, if passed at a regular session, *takes effect on the first day of July after its passage* [.] (Emphasis added.)

SDDS' argument may have technical merit, largely due to the inartful drafting of Initiated Measure 1. The drafters of the measure chose language which only requires the enactment of a "bill" and, as SDDS correctly points out, the legislature passed a "bill" on February 25, 1991.[3] This court finds, however, that sound public policy supports State's rationale.

■ Article III, § 22 and SDCL 2–14–16 clearly delay (with a few exceptions not relevant here) the effective date of all acts or laws of the legislature. The purpose for the delay provision is to allow our citizens time to obtain sufficient signatures to begin the referendum process. *See* Article III, § 1; SDCL 2–1–3 through 2–1–14. *Byre v. City of Chamberlain,* 362 N.W.2d 69 (S.D.1985); *Wyatt v. Kundert,* 375 N.W.2d 186 (S.D.1985); *Baker v. Jackson,* 372 N.W.2d 142 (S.D.1985); *Bjornson v. City of Aberdeen,* 296 N.W.2d 896 (S.D. 1980). Were we to adopt SDDS' argument, we would effectively defeat the referendum rights of this state's citizens.

We reiterate that the language of the Initiated Measure was poorly chosen; however, to adopt SDDS' rationale would alter the legislative process, the plain language of our constitution, and eliminate the right to referendum of our citizens merely because of poor or ill-advised drafting. We refuse to do that. Thus, we find that the provisions of Article III, § 22 and SDCL 2–14–16 apply to SB 169 and, therefore, it is subject to referendum.

Affirmed.

---

**3.** Interestingly, SB 169 contained the enacting clause which Article III, § 18 requires in all laws, and SB 169 was entitled as an "Act."

WUEST and HENDERSON, JJ., concur.

SABERS, J., concurs specially.

AMUNDSON, J., concurs in result.

SABERS, Justice (concurring specially).

I write specially to point out that SDDS presents a strong case for the proposition that the Legislature has enacted a bill approving SDDS's facility and therefore, SDDS has fully and immediately complied with the initiated measure. The crack in the armor of the proposition is that all legislative acts are subject to referendum by the people.

Article III, § 1 of the South Dakota Constitution provides in part:

[T]he people expressly reserve to themselves ... the right to require that any laws which the legislature may have enacted shall be submitted to a vote of the electors of the state before going into effect[.]

SDCL 2–1–3 provides in part:

Any law which the Legislature ... [enacts] [with exceptions not material here] shall, upon the filing of a [referendum] petition, ... be submitted to a vote of the electors of the state at the next general election[.]

Therefore, any legislative enactment, even if authorized by the people through an initiated measure, such as here, is subject to referendum. S.D. Const. art. III, § 1 & SDCL 2–1–3.

AMUNDSON, Justice (concurring in result).

I would not make any determination regarding the requirements of SB 169 and the Initiated Measure in light of our holding that SDDS' permit had not been properly granted by the Board at the times material to the issue presented in this appeal.

In *Matter of SDDS, Inc.,* 472 N.W.2d 502 (S.D.1991) (hereinafter *SDDS I*), we determined the Board's findings that the issuance of the permit was environmentally safe and in the public interest were "so general and conclusory as to wholly fail to satisfy the standards of SDCL 1–26–25 and *Lemke v. Rabenberg's, Inc.,* 89 S.D. 386, 233 N.W.2d 336 (1975)." *SDDS I,* at 514.

Since Board gave no underlying basis for its conclusion that Lonetree was environmentally safe, we were unable to engage in any form of meaningful judicial review. We reversed the Board and circuit court decisions and remanded the environmental safety and public interest issues to Board to make more particular findings as required by statute and its own rules when issuing a permit. *SDDS I,* at 514.

While this court has never specifically addressed the issue, it is a general rule that the failure of an administrative agency to make express findings of fact where such findings are required, renders the administrative determination void. *Wichita R.R. v. Pub. Util. Comm.,* 260 U.S. 48, 43 S.Ct. 51, 67 L.Ed. 124 (1922); *Panama Refining Co. v. Ryan,* 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935); *United States v. B. & O. Co.,* 293 U.S. 454, 55 S.Ct. 268, 79 L.Ed. 587 (1935); *Mahler v. Eby,* 264 U.S. 32, 44 S.Ct. 283, 68 L.Ed. 549 (1924); *Garden Court Apartments v. Hartnett,* 45 Del. 1, 65 A.2d 231 (1949); *Chicago Rys. Co. v. Commerce Commission,* 336 Ill. 51, 167 N.E. 840 (1929); *Mitchell Bros. Truck Lines v. Hill,* 227 Or. 474, 363 P.2d 49 (1961).

In *Wichita, supra,* the United States Supreme Court held, in reviewing an administrative decision, as follows:

The proceeding we are considering is governed by § 13. That is the general section of the act comprehensively describing the duty of the Commission, vesting it with power to fix and order substituted new rates for existing rates. The power is expressly made to depend on the condition that after full hearing and investigation the Commission *shall find* existing rates to be unjust, unreasonable, unjustly discriminatory or unduly preferential. We conclude that *a valid order of the Commission under the act must contain a finding of fact* after hearing and investigation, upon which the order is founded, and that *for lack of such a finding, the order in this case was void.* (Emphasis supplied.)

260 U.S. at 58, 43 S.Ct. at 55, 67 L.Ed. at 130.

SDCL 1–26–25 states: "Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings." We further interpreted this statute in *Lemke, supra,* and, in fact, already held that Board's findings on public interest and environmental safety were insufficient. *SDDS I,* at 514. Since there were no findings as required, I would hold SDDS did not possess a valid permit when SB 169 was enacted by the South Dakota legislature. Therefore, there would have been no permit in existence for the legislature to approve and approval could not be given until Board had performed its mandatory statutory and administrative duty. *Wichita, supra; Panama, supra.*

Until such time as SDDS does, in fact, possess a validly issued permit, I would decline to determine when SDDS could commence operation.

In conclusion, I would affirm the decision of the trial court for the reasons stated herein.