SDDS, INC., a South Dakota
Corporation, Plaintiff
and Appellee,

v.

STATE of South Dakota, George Mickelson, as Governor, Joyce Hazeltine, as Secretary of State, and Mark Barnett, as Attorney General for the State of South Dakota, Petitioners and Appellants.

No. 17841.

Supreme Court of South Dakota.

Argued Nov. 16, 1992.

Reassigned April 6, 1993.

Decided June 30, 1993.

Marvin D. Truhe and Dale R. Cockrell of Marvin D. Truhe Law Offices, Rapid City, William E. Murane, Charles M. Johnson, Marcy C. Glenn and William E. Mooz of Holland and Hart, Denver, CO, for plaintiff and appellee.

Mark Barnett, Atty. Gen. and Roxanne Giedd, Asst. Atty. Gen., Pierre, for petitioners and appellants.

MILLER, Chief Justice (on reassignment).

This is another in a series of at least eight actions, brought by South Dakota Disposal Systems, Inc. (SDDS) in the state and federal courts of South Dakota, which pertain to its proposed municipal solid waste disposal facility in Fall River County, South Dakota. This action (SDDS III) was brought in Fall River County against the State of South Dakota and various of its constitutional officers. State moved to change venue to Hughes County, the situs of the State Capitol. Its motion was denied and we granted State this discretionary interlocutory appeal. As Hughes County is the only appropriate venue for this action, we reverse the trial court.

## BACKGROUND

SDDS owns approximately 1200 acres of land known as the "Lonetree" property which is located near the City of Edgemont in Fall River County. SDDS sought a permit from the State Board of Minerals and Environment to enable it to construct and operate a municipal solid waste disposal facility on Lonetree. In September, 1989, a one-year permit was issued.[1] It was renewed for an additional five years in December, 1990. The validity of these permits is not before the court on this interlocutory appeal; that is the subject of another appeal (SDDS IV) currently pending before this court.

After the one-year permit was issued, sufficient signatures were obtained to put Initiative Measure No. 1 on the 1990 general election ballot.[2] The Initiative, as approved by a majority of South Dakota voters, and as now codified at SDCL 34A–6–53 through –56, requires the legislature to approve the siting, construction and operation of all large-scale waste disposal facilities located in South Dakota. Construction was halted on Lonetree pending legislative approval of its waste disposal operation.

In response to the adoption of the Initiative by the people of South Dakota, SDDS immediately brought an action in Hughes County challenging its constitutionality. In January, 1991, a bill was introduced in the legislature which would comply with the Initiative's directives. A week later, SDDS brought the first of two actions alleging the Initiative had worked an inverse condemnation on SDDS to its damage. That action was also brought in Hughes County and sought "reasonable damages" of $100 million.

Meanwhile, in compliance with the Initiative's directives, the 1991 Legislature passed Senate Bill 169 which approved the Lonetree operation. Following passage of the Bill, sufficient signatures were obtained to refer the Bill to the voters of South Dakota in the November, 1992, general election as Referred Law 1. Thus, Senate Bill 169 did not take effect and the Lonetree operation could not go forward until such time as the proposed legislative enactment was voted on by the people of South Dakota.[3] SDDS responded with another action, again brought in Hughes County, challenging the statutory construction of the Initiative and Senate Bill 169.[4]

In the fall of 1991, SDDS sought, and was granted, a voluntary dismissal of its Hughes County inverse condemnation action. Shortly thereafter, the trial court in Hughes County found the Initiative to be constitutional except as applied to the one-year permit which had already expired by its own terms. One week later, SDDS brought a second inverse condemnation action. Though substantially similar to the action it had filed previously in Hughes County, there were two notable differences in the refiled action: (1) It included allegations that in addition to the Initiative, the act of referring Senate Bill 169 had also damaged SDDS; and (2) more importantly for purposes of this appeal, the second inverse condemnation action was no longer venued in Hughes County; rather, it was venued in Fall River County.

---

1. See In re Application of SDDS, Inc., 472 N.W.2d 502 (S.D.1991) (SDDS I), for background regarding the issuance of this permit.

2. The South Dakota Constitution expressly reserves to the people of the State of South Dakota "the right to propose measures, which shall be submitted to a vote of the electors of the state[.]" S.D. Const. art. III, § 1. The effective date of an approved initiated measure is "the day after the completion of the official canvass by the state canvassing board." SDCL 2–1–12.

3. The South Dakota Constitution recites that "the people expressly reserve to themselves the right to ... require that any laws which the Legislature may have enacted shall be submitted to a vote of the electors of the state before going into effect, except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions." S.D. Const. art. III, § 1; SDCL 2–1–3. The effective date of an approved referred measure is "the day after the completion of the official canvass by the state canvassing board." SDCL 2–1–12.

4. This court's opinion in SDDS, Inc. v. State, 481 N.W.2d 270 (S.D.1992) (SDDS II) elaborates on the statutory construction issues.

State sought to transfer the refiled suit back to Hughes County from Fall River County. SDDS resisted State's motion and the question of appropriate venue was briefed to the Seventh Judicial Circuit Court in Fall River County. The trial court also held a hearing on State's motion. The Honorable Marshall P. Young determined Fall River County was an appropriate venue under either SDCL 15-5-1 or -2. State sought appeal of the trial court's order and we granted this discretionary appeal limited to the question of appropriate venue.[5] We now determine Hughes County, in the Sixth Judicial Circuit, is the only appropriate venue for this action, and we reverse the trial court's determination that Fall River County is an appropriate venue.

## DECISION

With the exception of this case, SDDS has not brought any of its several previous actions in Fall River County. Further, with the exception of this latest action, SDDS's three previous Initiative contests were all brought in Hughes County. When State attempted to return this, their fourth Initiative contest, to Hughes County, SDDS successfully resisted and State's motion to transfer venue was denied.

■ Venue may properly lie in more than one county. *Hills Materials Co. v. Van Johnson*, 316 N.W.2d 646 (S.D.1982). A plaintiff's choice of venue will generally be respected absent statutory grounds requiring a change of venue. *Putnam Ranches, Inc. v. O'Neill Prod. Credit Ass'n*, 271 N.W.2d 856, 858 (S.D.1978); SDCL ch. 15-5. However, a plaintiff's choice of venue may be changed at the discretion of the trial court "[w]hen the county designated for that purpose in the complaint is not the proper county[.]" SDCL 15-5-11(1). Nevertheless, SDCL 15-5-11 is more properly viewed as residual authority for a trial court to change venue should it occur that no other statute specifically addresses a venue question. Absent a clear abuse of discretion, we will not

reverse a trial court's venue rulings on appeal. *See American Adv. Co. v. State*, 280 N.W.2d 93, 95 (S.D.1979); *Nedved v. Nedved*, 59 S.D. 161, 162, 238 N.W. 643, 643 (1931).

However, some venue statutes remove the trial court's discretion to deny a motion for change of venue if a proper demand for a change has been made and the facts of the case are such that a change of venue must be granted. *See, e.g.,* SDCL 15-5-1 through -10. In such a situation, "[w]here no discretion is conferred upon the court by statute, the court does not possess the discretion to deny a motion for change of venue." *American Advertising*, 280 N.W.2d at 97 (Henderson, J., dissenting).

SDDS alleges in its complaint that venue in Fall River County is proper under SDCL 15-5-6, though on appeal, SDDS argues it is not applicable. State argues section 15-5-6 supports venue in Hughes County. This section is not applicable if the cause of action fits within one of the other venue statutes. As we determine *infra* that SDCL 15-5-2 is applicable, we need not resort to SDCL 15-5-6.

SDDS also asserts venue in Fall River County is supported by SDCL 15-5-8. We find, after examining its language, that it does *not* support venue in Fall River County:

Actions for conversion of personal property, or for the recovery of damages to persons or property, may at the option of the plaintiff be brought and tried in the county where the damages were inflicted or the cause of action arose.

SDCL 15-5-8. In *Kreager v. Blomstrom Oil Co.*, 298 N.W.2d 519 (S.D.1980), which was a products liability action, we looked at the meaning and intent of "where the damages were inflicted." Although one of the defendants, Blomstrom, had its principal place of business in Tripp County, we determined venue in Lyman County was also proper as that was where the transaction between the parties arose which led to the injuries. We do not find SDDS's alleged

---

**5.** Following the filing of this appeal, Referred Law 1 was rejected by South Dakota's voters at the 1992 general election. As a result, Senate Bill 169 will not take effect and the Lonetree facility will not go into operation.

damages were inflicted by a similar transaction between SDDS and the State or its constitutional officers. Further, as we demonstrate *infra*, SDDS's cause of action arose entirely in Hughes County.

SDDS alleges it has spent millions of dollars in furtherance of its objectives and has entered into negotiations and contracts which would allow it to profit from its proposed use of the Lonetree property. SDDS further alleges it has been damaged by the Initiative and Referendum in that they have effected an inverse condemnation of its property and worked an interference with its right of contract and with its potential business relations.

■ The trial court found, after briefing and a hearing, that "[t]his action is essentially one for damage to real property situated in Fall River County. As such, venue is governed by the provisions of SDCL 15–5–1." State asserts the subject of the action is the permit and further asserts the trial court erred when it found real property to be the subject of the action and found venue is governed by SDCL 15–5–1. SDDS contends the trial court was correct. We will not set aside a trial court's finding of fact, upon which its order is based, unless the finding is clearly erroneous. *State v. Harris*, 494 N.W.2d 619, 624 (S.D.1993); *State v. Brings Plenty*, 459 N.W.2d 390, 399 (S.D.1990).

■ The parties have misperceived the subject of this dispute and the trial court erred when it found the subject of the action to be damage to the Lonetree real property. It is neither proper nor necessary to now determine whether the Lonetree real property or permit, if either, has been affected by the Initiative and Referendum. It is apparent that *the subjects of this dispute are the Initiative and Referendum* as this action revolves around their alleged harmful effects to either the Lonetree property or the permit or both. Therefore, SDCL 15–5–1 is simply inapplicable to this action and will not support venue in Fall River County.

The trial court went on to find that "[e]ven if, as the State argues, the provisions of SDCL 15–5–2 are applicable, venue

properly lies in Fall River County as the location where the causes of action pleaded in the Complaint, or some part thereof, arose." As we shall discuss, the trial court erred when it found that some part of "the causes of action pleaded in the Complaint" arose in Fall River County. The cited venue provision reads in relevant part:

> Actions for the following causes ... must be tried in the county where the cause, or some part thereof, arose, ... subject to the power of the court to change the place of trial:

> . . . .

> (2) Against a public officer, or person specially appointed to execute his duties, for an act done by him in virtue of his office, or against a person, who, by his command or his aid, shall do anything touching the duties of such officer[.]

The meaning and interpretation of the substantially similar statutory predecessor to this statute was discussed in *Meihak v. Schreckenghaust*, 67 S.D. 603, 297 N.W. 122 (1941). In that case, the sheriff and deputy sheriff of Meade County, public officers, incarcerated Meihak in Meade County and later, incarcerated him in Pennington County. This court looked at Meihak's complaint and determined that some part of Meihak's cause of action arose in Meade County and in Pennington County as the public officers had performed acts against Meihak in each of those counties. Venue was, therefore, proper in either county.

In *McDonald v. State*, 86 S.D. 570, 199 N.W.2d 583 (1972), we elaborated on the proper determination of where a cause of action arises. There, McDonald, a Pennington County plaintiff, brought a mandamus proceeding in Pennington County Circuit Court. He alleged he performed services in and around Pennington County for the State and further alleged his payment for those services was withheld wrongfully by the South Dakota Highway Department in Pierre. McDonald sought an order that public officers of the State disburse to him

compensation which, he alleged, was properly due him.

That court first stated that for purposes of determining venue, the distinction between a mandamus "proceeding," as opposed to an "action," was not important and concluded that even though McDonald had performed his services in Pennington County, venue was improper there. In reaching its decision that venue must be transferred to Hughes County, that court quoted the Ohio Supreme Court with approval:

A "cause of action" arises out of the right and the wrong on which the action is based. It is the fact or combination of facts which gives rise to a grant of action, the existence of which affords a party a right to judicial interference in his behalf.

In considering the term "cause of action" in its application to the litigation in hand, a distinction must be made between the claim of the relator for compensation and the facts which give rise to the case at bar.

*Id.*, 86 S.D. at 576, 199 N.W.2d at 586 (citations omitted) (quoting *State ex rel. Hawley v. Industrial Comm'n*, 137 Ohio St. 332, 30 N.E.2d 332, 333 (1940)). The *McDonald* court identified four venue considerations: the right claimed, the wrong claimed to have been suffered, the relief sought and "the place where the facts creating the necessity for bringing the action occur." *Id.* In applying the four parts of the test, the *McDonald* court continued to quote the Ohio Supreme Court with approval when it observed that McDonald's position was similar to that of the Ohio plaintiff in that he asserted the right

to have his compensation claim heard and allowed by the [department]. The wrong which he claims in his petition to have suffered is the refusal of the [department] to act on his claim. The relief sought is that the [department] be required by the writ of mandamus to act upon and allow his claim. His alleged right, his claimed wrong, and the relief which he demands—the elements of his alleged cause of action which makes nec-

essary the action itself—are all centered in the [department] and its failure or refusal to act in its official capacity. Furthermore, a cause of action "arises" at the place where the facts creating the necessity for bringing the action occur.

*Id.* (citations omitted). Although McDonald was *affected* in Pennington County by the actions of public officers, they took no *action* in Pennington County against McDonald. Nor did he perform an act relevant to his cause of action in Pennington County. Hughes County was the only appropriate venue as McDonald's cause of action arose solely in Hughes County.

We applied the four-part venue test again in *Hills Materials Co.*, 316 N.W.2d 646. That case arose out of a dispute by Hills Materials with the South Dakota Department of Revenue over a penalty and interest payment made by Hills Materials in Pennington County for their alleged failure to timely file and pay a state tax. After outlining the four considerations, Justice Dunn, writing for a unanimous court, applied the facts, taken from the complaint, to the test. Hills Materials claimed the right to

recover the penalty and interest from [the Department of Revenue]. The wrong which it claims to have suffered . . . is the wrongful imposition of the penalty and interest by [the Department of Revenue]. The relief sought is for judgment to be entered against [the Department of Revenue] allowing [Hills Materials] to be reimbursed. The place where the facts occurred which created the necessity for bringing the action is Pennington County where [Hills Materials] issued the replacement check and paid the penalty and interest under protest, thus necessitating this suit for recovery of taxes. The first three elements arose in Hughes County and refer to [the Department of Revenue's] imposition of a penalty on [Hills Materials]. *The fourth element, however, refers to [Hills Material's] actions* which arose in Pennington County.

*Id.* at 648 (emphasis added). Although *acts* by the public officers in Hughes County had an *effect* in Pennington County, it was

because Hills Materials took *acts* in Pennington County that "a part of the cause of action arose in Pennington County, [and] the action was properly brought there under SDCL 15–5–2." *Id.*

Applying the instant facts to our venue test, it becomes apparent that, like *McDonald* and, unlike *Meihak* and *Hills Materials,* there is only one court in which venue of this action is proper—the Sixth Judicial Circuit Court in Hughes County. We make this determination upon looking to the complaint. *See Hills Materials,* 316 N.W.2d at 648; *McDonald,* 86 S.D. at 577, 199 N.W.2d at 586 (looking to McDonald's application and affidavit for the writ of mandamus); *Meihak,* 67 S.D. at 606, 297 N.W. at 123.

What is the right which SDDS claims? It is the right to reasonable compensation for damages claimed to have been sustained as a result of the Initiative and Referendum. What is the wrong SDDS claims to have suffered? It is the lack of just compensation for damages it claims to have sustained as a result of the Initiative and Referendum. The relief SDDS seeks is for judgment against the State and its public officers awarding it just compensation for damages claimed to have been sustained as a result of the Initiative and Referendum. And, lastly, the facts which created the necessity for bringing the action undoubtedly occurred solely in Hughes County where the petitions for the Initiative and Referendum were filed with, and approved by, the Secretary of State, and where the Initiative and Referendum were directed to be placed on the ballot and where they were subsequently embodied into law.

All four considerations clearly are centered on the *acts* of State and/or its public officers in the State Capitol in Hughes County. SDDS has not performed any *act* relevant to this cause of action in Fall River County from which we could say a part of this action arose in Fall River County. *Contra Hills Materials,* 316 N.W.2d 646 (plaintiff performed acts in his own county). Nor have State or its public officers performed any such *acts* in Fall River

County. *Compare Meihak,* 67 S.D. 603, 297 N.W. 122 (public officers *did act* in plaintiff's county) *with McDonald,* 86 S.D. 570, 199 N.W.2d 583 (public officers *did not act* in plaintiff's county).

In contrast to the law of some other jurisdictions, effects due to the actions of public officials are not sufficient under South Dakota law to show "the cause, or some part thereof" arose in Fall River County. There must be acts. Although the Initiative, and more directly, the Referendum, may have affected Fall River County, and in particular, the Lonetree facility, these possible effects are not proper venue considerations for South Dakota's courts since the fact remains that *no acts were taken in Fall River County by either party.*

We need not address whether the mere act of voting in a referendum or initiative is a sufficient act to place venue in Fall River County as SDDS, Inc., a South Dakota corporation, did not, and could not, cast such votes. Nor do we decide today that the mere involvement of the State or its public officers as defendants requires venue to be placed in Hughes County, the seat of South Dakota's state government. We decide only that where the right claimed, the wrong claimed, and the relief sought do not arise in the plaintiff's choice of venue, venue will not lie in that county unless the plaintiff, or the defendant State and/or its public officers, performs some act in the plaintiff's chosen county.

Although venue rulings are within the discretion of the trial court, if a proper demand for a change of venue has been made, judicial discretion is abused when, as here, venue is not transferred to the only county in which venue is appropriate.

Reversed.

WUEST and AMUNDSON, JJ., concur.

HENDERSON and SABERS, JJ., dissent.

HENDERSON, Justice (dissenting).

When determining venue, trial courts are not to decide proper forum by a process of elimination. Rather, they are to look

where venue has a statutory right to exist. *See* SDCL ch. 15–5. As cases are to be tried "where the cause, or some part thereof, arose," the trial court certainly did not abuse its discretion in finding the Seventh Judicial Circuit, Fall River County, home of this dispute, to be appropriate venue for this action. Therefore, I respectfully dissent.

Although the Seventh Judicial Circuit provided adequate venue for *SDDS I* and *SDDS IV*, the majority writing holds that such venue will not suffice in this case. Granted, Hughes County in the Sixth Judicial Circuit is appropriate for this action; however, it is not the only appropriate venue. Under our statutory provisions, venue may properly lie in more than one county. *See* SDCL 15–5–1, 15–5–2.

Venue in Fall River County may be established under SDCL 15–5–2(2) which provides:

> Actions for the following causes, or upon the following instruments, must be tried in the county *where the cause, or some part thereof, arose,* or the forfeiture was declared, subject to the power of the court to change the place of trial:
>
> > (2) *Against a public officer,* or a person specially appointed to execute his duties, or an act done by him in virtue of his office, or against a person, who, by his command or his aid, shall do anything touching the duties of such officer[.] (Emphasis supplied).

As the State, the Governor, the Secretary of State, and the Attorney General are public officers and named defendants herein, and their actions impacted and involved land in Fall River County, "the cause, or some part thereof, arose" there.

This Court has consistently held that the cause of action is determined by the allegations in the complaint; no other pleading is relevant to the issue. *Kreager v. Blomstrom Oil Co.,* 298 N.W.2d 519 (S.D.1980); *American Advertising Company v. State,* 280 N.W.2d 93 (S.D.1979); *McDonald v. State,* 86 S.D. 570, 199 N.W.2d 583 (1972); *Meihak v. Schreckenghaust,* 67 S.D. 603, 297 N.W. 122 (1941). In its complaint, SDDS' cause of action alleges in part:

★ Ownership of property in Fall River County;

★ Ownership of a permit to construct and operate a municipal solid waste disposal facility on that property;

★ $5 million in construction expenses for said facility;

★ State Initiative Measure No. 1 was enacted as SDCL 34A–6–53 to 34A–6–56 and required the shutdown of the facility;

★ Although the Legislature has since found the facility to comply with new laws, a pending Referendum on the November 3, 1992 ballot has prevented the facility from operating;

★ Loss of anticipated revenue.

Furthermore, SDDS asserts that because the initiative and referendum have prohibited the siting, construction and operation of the Lonetree facility, inverse condemnation has occurred. When condemnation is alleged, the proper venue is the county in which the land lies. 27 Am.Jur.2d *Eminent Domain* § 382 (1966). Where the issue involved is whether land has been taken or damaged by the state, venue properly lies in the county where the land is situated. *State ex rel. Schmitt v. Hoffman,* 233 Minn. 186, 46 N.W.2d 468 (1951). The judicial inquiry for the assessment of damages is held in the appropriate court of the county in which the land affected by the taking lies. 6 Nichols on Eminent Domain § 24.23 (rev. 3d ed. 1993). Under the complaint's facts and allegations, the cause of action is centered in and around Fall River County. Because the key element for establishing venue is where part of the cause of action arose, venue under SDCL 15–5–2(2) is justified.

As Justice Sabers accurately illustrates in his dissent, application of the four-part venue test further supports Fall River County's right to venue. Most specifically, the fourth element permits venue in the place where the facts "creat[ing] the necessity for bringing the action arose." Though the referendum and initiative may have provided the catalyst initiating this lawsuit, make no mistake, these elections undeniably focused on Fall River County.

The referendum itself was a vote specifically concerning the Lonetree facility, situated in Fall River County.*

Due to its economic injuries, SDDS also alleges that SDCL 15-5-1(1) permits venue in Fall River County and provides in pertinent part:

Actions for the following causes must be tried in the county in which *the subject of the action, or some part thereof,* is situated, subject to the power of the court to change the place of trial in the cases provided by the statute:

(1) For the recovery of real property, or of an estate or interest therein, or for the determination in any form of such right or interest, and ... *for injuries to real property* ...

(Emphasis supplied). With the complaint alleging damages to the Lonetree facility, venue is proper in Fall River County. To hold otherwise is to hold that this suit does not concern the Lonetree property and undermines the validity of SDDS' claim before the case is tried. Today, this Court is asked only to resolve venue, not the underlying issue of inverse condemnation. The merits of the underlying issue must first be addressed by the trial court. *Northwestern Engineering Company v. Thunderbolt Enterprises*, 301 N.W.2d 421 (S.D. 1981); *Weaver v. Boortz*, 301 N.W.2d 673 (S.D.1981). Part of the cause of action did arise in Fall River County and the trial court acted within its discretion in placing venue there.

Despite the majority's interpretation that *physical acts* by the defendants must have taken place in the desired county in order for venue to exist, other jurisdictions have held contrary. Venue may appropriately lie in the county *impacted* by the actions of state officials, not necessarily where the official resides or acts. *Priest Lake Coalition v. State ex rel. Evans*, 111 Idaho 354, 723 P.2d 898 (1986); *Brown v. Superior Court*, 37 Cal.3d 477, 208 Cal.Rptr. 724, 691 P.2d 272 (1984); *Ford v. Montana Dept. of Fish, Wildlife and Parks*, 208

Mont. 132, 676 P.2d 207 (1984); *Deaconess Hospital v. Washington State Highway Commission*, 66 Wash.2d 378, 403 P.2d 54 (1965). *See Erwin v. Perego*, 93 F. 608 (8th Cir.1899) (cause of action concerning a mining claim arose in county where land was situated, not where application with government was filed).

An abuse of discretion occurs only if no "judicial mind in view of the law and circumstances of the particular case, could reasonably have reached such a conclusion." *Jensen v. Weyrens*, 474 N.W.2d 261, 263 (S.D.1991); *Matter of Estate of Pejsa*, 459 N.W.2d 243, 245 (S.D.1990). Not only did part of this action arise in Fall River County, the circumstances surrounding the allegations have indeed impacted this area. Venue lies here.

SABERS, Justice (dissenting).

Fall River County is an appropriate venue for this action under SDCL 15-5-2(2). This is an action against the State and its public officers and "must be tried in the county where the cause, or some part thereof, arose[.]" It is clear to me that this cause, or some part thereof, arose in Fall River County. Almost all of the alleged damages occurred in Fall River County. Even assuming the *initiative* and *referendum* to be the turning point in this action, some part of both arose in Fall River County.

Even under the four part test of *McDonald* urged by the majority, at least one of the elements arose in Fall River County.

1. SDDS claims the *right* to compensation for damages sustained in Fall River County as a result of the initiative and referendum.

2. The *wrong* SDDS claims to have suffered is that they have been prohibited from siting, constructing or operating the Lonetree Facility in Fall River County.

3. The *relief* demanded by SDDS is for judgment against the state and its public officers for the compensation and

---

* Referred Law 1 read: "An act entitled to approve the siting, construction and operation of the Lonetree solid waste disposal facility."

damages referred to above in Fall River County.

4. As indicated above, even some of the facts resulting in the initiative and referendum *which created* the necessity for bringing the action arose in Fall River County.

*McDonald*, 86 S.D. at 576, 199 N.W.2d at 586. To establish proper venue in Fall River County, however, only *one* of the elements need arise there. *Hills Materials*, 316 N.W.2d at 648. Therefore, the majority errs.

As SDDS argues, SDCL 15–5–2(2) does not limit venue for all actions against public officials to Hughes County. Rather, it permits venue in actions against public officials in any county where all or any part of the cause of action arose. *See, e.g., Hills Materials*, 316 N.W.2d at 648 (venue proper under SDCL 15–5–2 in Pennington County when part of cause arose there and part arose in Hughes County); *Meihak*, 67 S.D. at 607, 297 N.W. at 123 (venue proper under predecessor to SDCL 15–5–2 in Pennington County when part of cause arose there and part arose in Meade County).